NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JAMES L. KEYS,**
*Petitioner*

**v.**

**DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,**
*Respondent*

---

2021-2072

---

Petition for review of the Merit Systems Protection Board in No. DC-1221-19-0150-M-1.

---

Decided: March 9, 2022

---

JAMES L. KEYS, Hanover, MD, pro se.

TANYA KOENIG, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BRIAN M. BOYNTON, CLAUDIA BURKE, MARTIN F. HOCKEY, JR.

---

Before NEWMAN, LOURIE, and TARANTO, *Circuit Judges*.

PER CURIAM.

James L. Keys resigned from his job with the United States Department of Housing and Urban Development (HUD, or agency) after being reassigned from one position to another. He later filed an appeal with the Merit Systems Protection Board alleging, as now relevant, that the reassignment was an act of reprisal by HUD for whistleblowing on his part. In the decision now before us, the Board, after a hearing, denied the reprisal claim on three grounds: the asserted disclosure (the basis for the whistleblowing reprisal claim) was not a protected one; even if it was, Mr. Keys had not shown that the disclosure was a contributing factor in his reassignment; and even if he had made that showing, the agency had carried its burden to demonstrate that it would have reassigned Mr. Keys in the absence of the disclosure. *Keys v. Dep't of Hous. & Urban Dev.*, No. DC-1221-19-0150-M-1, 2021 WL 1081710 (M.S.P.B. Mar. 19, 2021) (*Board Op.*). We affirm, finding no error in the final ground, which suffices to support the Board's ruling.

I

Mr. Keys joined HUD in 2001 and worked in various positions over the years. In 2011, he began serving as a Discrimination Complaint Manager in HUD's Office of Field Policy Management. He soon filed an Equal Employment Opportunity (EEO) complaint, in which he alleged, among other things, that his then-supervisor failed to provide him a description of his position or a performance plan. In December 2011, after resolution of the complaint, Mr. Keys was reassigned to work under a different supervisor, Nelson Bregón. Mr. Keys's title within the Office of Field Policy Management remained unchanged.

In early 2012, Mr. Keys filed a second EEO complaint, in which he alleged that he received a less-than-perfect performance rating for Fiscal Year 2011 in retaliation for his first EEO complaint. The Equal Employment Opportunity Commission ruled against Mr. Keys, who then

brought suit in the U.S. District Court for the District of Columbia under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging that the agency subjected him to illegal discrimination as well as retaliation for his prior claims of discrimination. *Keys v. Donovan*, 107 F. Supp. 3d 62 (D.D.C. 2015) (*District Court Op.*). On January 26, 2015, in response to the agency's motion for summary judgment in the district court case, Mr. Keys accused Mr. Bregón and other unnamed senior agency officials of lying under oath. *See Board Op.* at 4; Plaintiff's Opposition to Motion to Dismiss or Summary Judgment at 7, *Keys v. Donovan*, No. 1:13-cv-1469-JEB (D.D.C. Jan. 26, 2015), ECF No. 30.

Just over a week later, on February 5, 2015, Mr. Bregón informed Mr. Keys that he was being reassigned to a new division within HUD, where he would have a new supervisor, Ms. Morales-Romero. Mr. Keys's position title would remain unchanged. The following month, on March 21, 2015, Mr. Keys resigned from HUD.

Two days after his resignation, Mr. Keys filed an adverse action appeal with the Board under 5 U.S.C. §§ 7511–13, claiming that his resignation was involuntary and thus a constructive removal. *See Board Op.* at 5. The administrative judge assigned by the Board dismissed the appeal for lack of jurisdiction, finding that Mr. Keys had failed to make a nonfrivolous allegation that his resignation was involuntary. *Keys v. Dep't of Hous. & Urban Dev.*, No. 0752-15-0531-I-1, 2015 MSPB LEXIS 3088 (M.S.P.B. Apr. 14, 2015). The decision became the Board's final decision in May 2015. The next month, the district court in Mr. Keys's Title VII case granted summary judgment against Mr. Keys. *District Court Op.* at 63–64.

In July 2018, Mr. Keys filed a whistleblower retaliation complaint with the Office of Special Counsel (OSC), pursuant to 5 U.S.C. § 1214(a)(1)(A), seeking corrective action for alleged "prohibited personnel practices" by HUD—

specifically, retaliation for whistleblowing in violation of the Whistleblower Protection Act, codified as relevant at 5 U.S.C. § 2302(b)(8), (9). He asserted that his 2015 reassignment within HUD had been in reprisal for a protected disclosure, identifying the protected disclosure as his statement to the district court that Mr. Bregón had lied under oath, and alleging that Mr. Bregón reassigned him because of that statement. Mr. Keys further alleged that his reassignment was improper for other reasons—specifically, the agency lacked an approved vacancy in the office to which he was reassigned, and the agency did not follow applicable regulations when it reassigned him from a bargaining unit position to a non-bargaining unit position. OSC closed its investigation without action.

In November 2018, Mr. Keys filed an individual right of action (IRA) appeal with the Board under 5 U.S.C. §§ 1214(a)(3), 1221, pressing his whistleblower reprisal challenge and seeking corrective action. The Board dismissed that challenge for lack of jurisdiction, but we reversed the dismissal and sent it back to the Board for further proceedings. *See Keys v. Merit Sys. Prot. Bd.*, 798 F. App'x 636, 637 (Fed. Cir. 2020). On remand, after holding an evidentiary hearing, the administrative judge rejected Mr. Keys's challenge for three independent reasons.

First, the administrative judge determined that Mr. Keys failed to prove that his accusation about Mr. Bregón in the district court was a disclosure protected by the relevant provisions of the Whistleblower Protection Act, as amended. *Board Op.* at 7–12. The administrative judge rested that conclusion on the limitations of whistleblower protection where EEO complaints are concerned and the fact that Mr. Keys's disclosure was made during his EEO litigation and related to issues underlying his EEO complaint. *Id.* at 10.

Second, the administrative judge found that, even if Mr. Keys's accusation against Mr. Bregón was a protected

disclosure, Mr. Keys could not prove by a preponderance of the evidence that it was a contributing factor in his reassignment. *Id.* at 12. Mr. Keys alleged that Mr. Bregón reassigned him in retaliation for that accusation, but the administrative judge found that Mr. Keys did not prove that Mr. Bregón even knew of the accusation at the time of Mr. Keys's reassignment. *Id.* at 15–18.

Third, the administrative judge found that, even if Mr. Keys made a protected disclosure that contributed to his reassignment, the agency carried its burden to demonstrate by clear and convincing evidence that it would have reassigned Mr. Keys regardless. *Id.* at 19. The administrative judge analyzed the record under the factors we outlined in *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999), and found that Mr. Keys would have been reassigned even if he had not made the identified disclosure. *Board Op.* at 25.

The administrative judge's decision became the final decision of the Board on April 23, 2021. Mr. Keys timely appealed. 5 U.S.C. § 7703(b)(1)(A). We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## II

We must affirm the Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed, or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

## A

To prevail on the merits of his IRA appeal, Mr. Keys had to prove by a preponderance of the evidence that he made a protected disclosure under 5 U.S.C. § 2302(b)(8) or 2302(b)(9)(A)(i), (B), (C), or (D). *See* 5 U.S.C. § 1221(a); *Young v. Merit Sys. Prot. Bd.*, 961 F.3d 1323, 1329 (Fed. Cir. 2020); *Ellison v. Merit Sys. Prot. Bd.*, 7 F.3d 1031, 1034

(Fed. Cir. 1993).   For purposes of an IRA appeal to the Board, while protected disclosures include the exercise of an appeal, complaint, or grievance right that itself relates to whistleblowing, 5 U.S.C. § 2302(b)(9)(A)(i), (b)(8), we have held that certain other non-whistleblowing complaints do not constitute protected disclosures.  *Young,* 961 F.3d at 1329; *see Hansen v. Merit Sys. Prot. Bd.*, 746 F. App'x 976, 981 n.6 (Fed. Cir. 2018) (reporting allegations of sexual harassment does not constitute a whistleblowing disclosure); *Garvin v. Merit Sys. Prot. Bd.*, 737 F. App'x 999, 1004 (Fed. Cir. 2018) (filing union grievances and EEO complaint are not considered whistleblowing disclosures); *Nuri v. Merit Sys. Prot. Bd.*, 695 F. App'x 550, 553 (Fed. Cir. 2017) (filing EEO complaint, unfair labor practice complaint, or grievance as to unfair performance evaluation is not within Board's IRA jurisdiction because petitioner was not seeking to remedy an act of whistleblower reprisal). Mr. Keys also had to prove, once he proved a protected disclosure, that the disclosure was a contributing factor in the agency's decision to take a personnel action against him.  5 U.S.C. § 1221(e)(1); *Hessami v. Merit Sys. Prot. Bd.*, 979 F.3d 1362, 1367 (Fed. Cir. 2020).

If Mr. Keys made those showings, the agency nevertheless could prevail in the IRA appeal by showing, by clear and convincing evidence, that it would have reassigned Mr. Keys even in the absence of the protected disclosure.  *See* 5 U.S.C. § 1221(e)(2).   The   Board's analysis on this issue generally is framed around the three non-exclusive *Carr* factors: (1) "the strength of the agency's evidence in support of its personnel action"; (2) "the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision"; and (3) "any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated." *Carr*, 185 F.3d at 1323.  For the agency to prevail, the evidence had to justify a "firm belief" that the

personnel action would have been taken had the protected disclosure not been made.  5 C.F.R. § 1209.4(e).

## B

Mr. Keys challenges the Board's findings that he failed to make each of his necessary two showings—that his accusation of lying by Mr. Bregón in the district court Title VII case was a protected disclosure and that the disclosure contributed to his reassignment by Mr. Bregón.  Mr. Keys also challenges the Board's finding that, even if the lying accusation was a protected disclosure that contributed to the reassignment, HUD proved by clear and convincing evidence that it would have reassigned Mr. Keys even had the lying accusation not been made.  We affirm that last Board finding, which we hold to be supported by substantial evidence.  *See Miller v. Dep't of Justice*, 842 F.3d 1252, 1258–59 (Fed. Cir. 2016) (applying substantial-evidence standard of review to this element of IRA appeal).  Because affirming that finding suffices to affirm the denial of corrective action by the Board, we affirm the Board's decision without reaching Mr. Keys's other challenges.

With respect to the first *Carr* factor, substantial evidence supports the Board's finding of strong evidence of HUD's reason for the reassignment—namely, a broad reorganization consolidating certain functions in the EEO of HUD—independent of the disclosure at issue.  *Board Op.* at 20.  The evidence reflects a "[p]lan for ensuring that the EEO DCM [Discrimination Complaint Manager] function is shifted back to EEO."  S. Appx. 285; *see also* S. Appx. 290 (identifying 21 Discrimination Complaint Managers, including Mr. Keys).  The record also contains testimony regarding Mr. Keys's light workload when under Mr. Bregón's supervision and the contrasting need for additional personnel in the EEO under Ms. Morales-Romero's supervision.  S. Appx. 279.  Ms. Morales-Romero's division in fact increased from six employees in early 2015 to ten by September 2015.  *Id.*

Mr. Keys contends that the agency could not have reassigned him to Ms. Morales-Romero's division because the agency had no approved vacancies in the new position. Keys Br. 28–29. He relies on testimony of a human resources officer for the agency, but the Board gave "little weight" to the testimony that Mr. Keys invokes because the officer had only recently joined the agency and was "ill at ease answering questions regarding the particulars of reassignment actions, and at times appeared to conflate the matter of a vacant, funded position with respect to a reassignment and the matter of a vacancy announcement used in the hiring process." *Board Op.* at 21–22. We have no sufficient basis for departing from our usual deference to such a credibility determination. *See Chambers v. Dep't of Interior*, 515 F.3d 1362, 1370 (Fed. Cir. 2008); *Hambsch v. Dep't of the Treasury*, 796 F.2d 430, 436 (Fed. Cir. 1986).

Mr. Keys contends that the reassignment was improper because the agency failed to comply with a protocol stated in a collective bargaining agreement. Keys Br. 29–31. The Board rejected this contention on the ground that Mr. Keys was not in the bargaining unit before he was reassigned; the Board observed that the union representative who testified on behalf of Mr. Keys did not suggest that the reassignment of a non-bargaining unit employee triggered the agreement protocols. *Board Op.* at 22. We see no basis for disturbing that determination.

With respect to the second *Carr* factor, *i.e.*, concerning the presence of a motive to retaliate, we find no reversible error in the Board's weighing this factor in favor of the agency. Mr. Keys contends that Mr. Bregón knew of the accusation of lying and would have been so infuriated by it that he would have been motivated to retaliate against Mr. Keys. Keys Br. 30. But the Board found that Mr. Bregón "credibly" and "emphatically denied" retaliating against Mr. Keys and that Mr. Bregón was "sincere and consistent with his prior efforts to assist" Mr. Keys. *Board Op.* at 23–24. The Board found that while Mr. Bregón "may have

ostensibly had such a motive," his testimony suggested that he did not, in fact, "harbor[] any such animus against [Mr. Keys]." *Id.* at 23.  Again, we see no adequate basis for declining to defer to the Board's credibility determination, which took as an assumption that Mr. Bregón knew of Mr. Keys's disclosure.

With respect to the third *Carr* factor, the Board explained that "neither party presented evidence directly relevant" to the agency's treatment of similarly situated individuals. *Id.* at 24.  This factor considers "any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated." *Miller*, 842 F.3d at 1262 (quoting *Carr*, 185 F.3d at 1323).  Mr. Keys points to certain other reassigned employees over whom the agency bargained with the union.  Keys Br. 31; *see id.* at 38–40 (Exhibit 3).  But he has not shown those employees were outside the bargaining unit (as he was) or, indeed, that they were non-whistleblowers.  We therefore see no basis for disturbing the Board's finding of no sufficient evidence of similarly situated employees who did not engage in protected activity. *See Siler v. EPA*, 908 F.3d 1291, 1299 (Fed. Cir. 2018) ("[W]here, as here, the Board finds an absence of relevant comparator evidence, the third *Carr* factor cannot favor the government.").

On this record, we conclude, the Board did not err in holding that the agency properly established by clear and convincing evidence that it would have taken the same personnel action even in the absence of Mr. Keys's presumedly protected disclosure.

C

Mr. Keys challenges the Board's exclusion of a witness, Keys Br. 27, an evidentiary ruling generally subject to review only for an abuse of discretion. *Curtin v. Off. of Pers. Mgt.*, 846 F.2d 1373, 1378–79 (Fed. Cir. 1988).  Mr. Keys sought to call an assistant general counsel in HUD's

Personnel Law Division to obtain testimony about whether Mr. Bregón knew of Mr. Keys's lying accusation at the relevant time.  Keys Br. 27.  The Board described the agency's objection as asserting irrelevance and also that the attorney's "participation as a fact witness could create a conflict of interest in this appeal, as [the attorney] supervises the agency representatives."  S. Appx. 38.  The Board sustained the agency's objection, stating simply that the attorney's "testimony would be duplicative of that of Bregón."  S. Appx. 38.  In challenging that ruling, Mr. Keys contends that the supervisor-attorney could uniquely testify to Mr. Bregón's knowledge.  Keys Br. 27.

We need not reach this challenge.  Even if the Board erred in excluding this testimony, any error is harmless.  Mr. Keys ties the potential testimony only to the contributing-factor element of the IRA appeal.  But the Board assumed that Mr. Keys had proved that element when it went on to decide that HUD would have reassigned him even had there been no disclosure.  Thus, the evidentiary ruling has no demonstrated bearing on the basis for the Board's denial of corrective action in the IRA appeal that we hold sufficient to support that denial.

## III

For the foregoing reasons, we affirm the decision of the Board.

The parties shall bear their own costs.

**AFFIRMED**