**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**


KEMPER STEVE WATKINS,
               Appellant,

        v.

DEPARTMENT OF DEFENSE,
               Agency.

DOCKET NUMBER
DC-1221-13-0230-W-3

DATE: January 31, 2023


# THIS FINAL ORDER IS NONPRECEDENTIAL[1]


<u>Kemper Steve Watkins</u>, Westminster, Colorado, pro se.

<u>Gordon R. Jimison</u>, Esquire, and <u>Michael Walby</u>, Esquire, Battle Creek,
    Michigan, for the agency.


**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member


**FINAL ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which dismissed in part for lack of jurisdiction and denied in part his request for corrective action in this individual right of action (IRA) appeal of his termination during his supervisory probationary period. Generally, we grant petitions such as

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED by this Final Order, we AFFIRM the initial decision. Specifically, we VACATE the administrative judge's finding that part of the appellant's appeal was outside the Board's jurisdiction, FIND jurisdiction over the appeal in its entirety, and DENY the appellant's request for corrective action.

## BACKGROUND

¶2    The appellant was appointed to a GS-14 Supervisory Property Disposal Specialist position in the competitive service effective June 6, 2011, subject to successfully completing a 1-year probationary period under 5 C.F.R. part 315 subparts H and I. *Watkins v. Department of Defense*, MSPB Docket No. DC-1221-13-0230-W-1, Initial Appeal File (IAF), Tab 7 at 55. On November 19, 2011, the agency terminated him from his position based on alleged inappropriate and unprofessional communications. *Id.* at 20-24. After exhausting his administrative remedies before the Office of Special Counsel (OSC), the appellant filed this appeal, contending that the termination constituted reprisal for whistleblowing. IAF, Tab 1, Tab 4 at 3-5, Tab 5 at 4-26. He requested a hearing. IAF, Tab 4 at 6.

¶3        During the adjudication of the appeal, the parties disputed discovery matters, which resulted in the administrative judge issuing an order permitting the appellant to conduct a forensic search of the agency's electronic mail system at his own expense. The appellant subsequently filed multiple motions for the administrative judge's disqualification, which were denied. Eventually, the appellant declared that he would not participate in the adjudication of his appeal unless it was reassigned to a different administrative judge and until the agency provided him with all discovery documents that he believed were wrongfully withheld from him. After providing the appellant with ample notice and an opportunity to participate in the adjudication of his appeal, the administrative judge canceled the hearing, allowed the record to remain open for final evidentiary submissions and argument, and decided the appeal on the written record. *Watkins v. Department of Defense*, MSPB Docket No. DC-1221-13-0230-W-3, Appeal File (W-3 AF), Tabs 6-7, 9-12.

¶4        In an initial decision, the administrative judge found that the appellant failed to prove by preponderant evidence that two of his four alleged protected disclosures were protected, and she dismissed for lack of jurisdiction that portion of the appeal pertaining to a third disclosure. W-3 AF, Tab 27, Initial Decision (ID) at 8-13. She found that the appellant proved that a fourth disclosure was protected and was a contributing factor in the agency's decision to terminate his appointment during his probationary period. ID at 11-12. She further found, however, that the agency proved by clear and convincing evidence that it would have terminated the appellant during his probationary period even absent any whistleblowing. ID at 3-18. She therefore denied the appellant's request for corrective action. ID at 1, 19.

¶5        The appellant petitioned for review of the initial decision. Petition for Review (PFR) File, Tab 1. The agency responded in opposition to the petition for review, and the appellant replied to the agency's response. PFR File, Tabs 3-5.

**ANALYSIS**[2]

<u>The administrative judge erred by dismissing part of the appeal for lack of jurisdiction.</u>

¶6    The Board has jurisdiction over an IRA appeal if the appellant has exhausted his or her administrative remedies before OSC and makes nonfrivolous allegations that: (1) he engaged in whistleblowing activity by making a protected disclosure; and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action. *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 14; *see also Hessami v. Merit Systems Protection Board,* 979 F.3d 1362, 1364, 1369 (Fed. Cir. 2020); *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001). The Board's regulations define a nonfrivolous allegation as an assertion that, if proven, could establish the matter at issue. 5 C.F.R. § 1201.4(s).[3] As the U.S. Court of Appeals for the Federal Circuit recently put it: "[T]he question of whether the appellant has non-frivolously alleged protected disclosures [or activities] that contributed to a personnel action must be determined based on whether the employee alleged sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Hessami*, 979 F.3d at 1362, 1364, 1369.

¶7    In this case, the appellant established jurisdiction over his IRA appeal when the administrative judge found that he made a nonfrivolous allegation that all four of his disclosures were protected and were a contributing factor in a personnel action. *Watkins v. Department of Defense*, MSPB Docket No. DC-1221-13-0230-

---

[2] We have reviewed the relevant legislation enacted since the filing of this appeal and find that it does not impact the outcome.

[3] The regulation further provides that an allegation generally will be considered nonfrivolous when, under oath or penalty of perjury, an individual makes an allegation that: (1) is more than conclusory; (2) is plausible on its face; and (3) is material to the legal issues in the appeal. *Id*. Pro forma allegations are insufficient to meet the nonfrivolous standard. *Clark v. U.S. Postal Service*, 123 M.S.P.R. 466, ¶ 6 (2016), *aff'd*, 679 F. App'x 1006 (Fed. Cir. 2017), *overruled on other grounds by Cronin v. U.S. Postal Service*, 2022 MSPB 13, ¶ 20 n.11.

W-2, Appeal File (W-2 AF), Tab 4. The correct disposition of this appeal, therefore, is a denial of the request for corrective action on the merits in its entirety. *See Piccolo v. Merit Systems Protection Board*, 869 F.3d 1369, 1371 (Fed. Cir. 2017) (outlining how, in IRA appeals, the Board must separate the issue of jurisdiction from that of the merits). Because the administrative judge afforded the appellant proper notice of the correct jurisdictional standard on more than one occasion, IAF, Tab 3; W-2 AF, Tab 4, and because her mistaken jurisdictional ruling does not affect the result of the case, there is no prejudice to the appellant's substantive rights and no basis for reversal of the initial decision. *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984). However, we modify the initial decision to clarify that the appeal is within the Board's jurisdiction and that we, and the administrative judge, considered the appellant's request for corrective action in its entirety and on its merits.

## The appellant made a protected disclosure that was a contributing factor in a personnel action.

¶8      The appellant asserted in his OSC complaint that he made four protected disclosures. The administrative judge found that the appellant failed to prove that he actually made two of the claimed disclosures because there was no evidence of record showing that he made them. The record does not contain a copy of either disclosure, or any document from which the alleged disclosures can be inferred, or any sworn statement indicating that the appellant made the disclosures. The only evidence of the disclosures is the appellant's unsworn claim on appeal that he made them. The administrative judge correctly found that the appellant did not submit preponderant evidence establishing that he made these two disclosures. The appellant does not challenge this finding on review and we discern no reason to disturb it.

¶9      The administrative judge also found that the appellant failed to prove that a third disclosure was protected. The appellant asserted to OSC that on or about October 27, 2011, he informed his superiors that *if* a certain military officer

decided to file a discrimination complaint with "the IG," then he would support her.  IAF, Tab 5 at 10.  The administrative judge determined that this disclosure amounted to the appellant announcing his intent to engage in protected activity under 5 U.S.C. § 2302(b)(9).  ID at 13.  Announcement of intent to engage in protected activity under 5 U.S.C. § 2302(b)(9) may be protected in some cases. *Cf. Mausser v. Department of the Army*, 63 M.S.P.R. 41, 44 (1994); ID at 13. However, the Board did not have IRA jurisdiction over allegations such as this one under 5 U.S.C. § 2302(b)(9) until December 2012, when the Whistleblower Protection Enhancement Act of 2012 (WPEA) took effect.[4]  Pub. L. No. 112-199, § 202, 126 Stat. 1465, 1476.  Therefore, the administrative judge correctly found that the appellant failed to prove that his third disclosure was protected.  ID at 13. Again, the appellant does not challenge the administrative judge's finding on this and we see no reason to revisit it.

¶10    The administrative judge found that a fourth disclosure, concerning the disposition of a large number of halon cylinders without being demilitarized, was protected.   ID at 11-12;  IAF, Tab 5  at 16;  W-2 AF, Tab 57  at 18-22.   The administrative judge noted that the appellant, as with his first two disclosures, did not submit evidence showing he actually made the disclosure, but she found sufficient evidence in the agency's submissions to establish that the appellant made the disclosure and that it was protected.  ID at 11-12. We agree.  Moreover, because the appellant was employed by the agency for only 5 months and made his protected disclosure to the people in his chain of command who eventually decided to terminate him, we find, as did the administrative judge, that the disclosure was a contributing factor in a personnel action. *Carey v. Department*

---

[4]   Section 101 of the WPEA amended 5 U.S.C. § 1221(a), (e), to extend the Board's jurisdiction over IRA appeals to claims of retaliation under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), and (D).  Pub. L. No. 112-199, 126 Stat. 1465-66.  The Board has explicitly found that section 101(b) is not retroactive. *Colbert v. Department of Veterans Affairs*, 121 M.S.P.R. 677, ¶ 7 (2014); *see also Hicks v. Merit Systems Protection Board*, 819 F.3d 1318, 1320-21, 1323 (Fed. Cir. 2016).

*of Veterans Affairs*, 93 M.S.P.R. 676, ¶ 11 (2003) (stating that an employee may show that a disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the action knew of the disclosure and that the action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action).

The agency showed by clear and convincing evidence that it would have terminated the appellant absent his disclosure.

¶11        Because the appellant made a prima facie case of whistleblower reprisal, the burden shifts to the agency to show by clear and convincing evidence that it would have terminated the appellant absent his disclosure about the halon fire cylinders.  In determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected activity, the Board will consider all of the relevant factors, including the following ("*Carr* factors"):   (1) The strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.  *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 11; *see also Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).[5]  The Board considers all the evidence, including evidence that detracts from the conclusion that the agency met its burden.  *Soto*, 2022 MSPB 6, ¶ 11; *see also Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).

_____

[5] Historically, the Board has been bound by the precedent of the U.S. Court of Appeals for the Federal Circuit on these types of whistleblower issues.  However, pursuant to the All Circuit Review Act, Pub. L. No. 115-195, 132 Stat. 1510, appellants may file petitions for judicial review of Board decisions in whistleblower reprisal cases with any circuit court of appeals of competent jurisdiction.  *See* 5 U.S.C. § 7703(b)(1)(B).  Therefore, we must consider these issues with the view that the appellant may seek review of this decision before any appropriate court of appeals.

¶12      The agency terminated the appellant from his position based on a charge of "inappropriate and unprofessional communications with agency personnel." IAF, Tab 7 at 21. The agency cited 13 instances in which he disparaged other employees in emails or during a meeting in Battle Creek, Michigan, an email to the Contracting Director containing aggressive criticism of the Contracting Division, and 3 instances in which he failed to communicate information to staff. *Id.* at 21-22. The agency also cited his practice of screening his telephone calls. *Id.* at 22. The record contains copies of memoranda documenting the appellant's telephone habits and communications issues[6] as well as one participant's memorandum from the Battle Creek meeting.[7] *Id.* at 43-56. The administrative judge discussed the evidence in support of the agency's charge, and her discussion is well-reasoned and thoroughly supported by the record. ID at 14-18. We agree with her conclusion that it was reasonable for the agency to expect a higher standard of decorum and diplomacy from a supervisor, especially at the appellant's level, and that it was entirely appropriate for the agency to use the probationary period[8] to assess the appellant's ability to perform the functions of

---

[6] Some examples of his communications issues include making very broad assignments and then failing to set parameters so the assignments could be completed; failing to issue guidance or provide clarification after saying he would do so; avoiding or forgetting to inform his staff of impending changes with the result that his subordinate supervisors had to take the initiative to communicate the information themselves; not attempting to solve problems at the lowest level but instead elevating every dispute into a complaint submitted to his superiors; delegating difficult conversations to his subordinate supervisors; and making himself difficult to reach (most of his staff was not co-located) by screening his telephone calls and by not responding to emails without being prompted to do so via telephone. IAF, Tab 7 at 25-32.

[7] Towards the end of the meeting memorandum, the author wrote, "As a group, we agreed that the meeting was a shining example of why things have been so difficult unnecessarily for the last 4 months." IAF, Tab 7 at 54.

[8] The appellant contended below that the agency had an illegal double standard for probationary and permanent employees. IAF, Tab 9 at 4-5, Tab 13; W-2 AF, Tab 3 at 4. The purpose of the probationary period is to allow a Federal agency to assess an employee's conduct and performance and to be able to terminate an unsatisfactory employee's employment quickly before the due process rights of a tenured civil servant

his position, including his ability to form productive professional relationships. *Cf. De Cleene v. Department of Education*, [71 M.S.P.R. 651](#), 655 (1996) (finding that an employee who engages in misconduct may be held to a higher standard if he encumbers a supervisory position). This factor weighs heavily in the agency's favor.

¶13     As to *Carr* factor two, we have found that those responsible for the agency's performance overall may well be motivated to retaliate even if they are not directly implicated by the disclosures, as the criticism reflects on them in their capacities as managers and employees. *Wilson v. Department of Veterans Affairs*, [2022 MSPB 7](#), ¶ 65; *Smith v. Department of the Army*, [2022 MSPB 4](#), ¶¶ 28-29. Here, however, we agree with the administrative judge's finding that the agency had little motive to retaliate against the appellant for his disclosure about the halon cylinders. ID at 15. As the administrative judge correctly stated, the relevant agency managers agreed with the appellant's assessment of the problem with the cylinders and found his recommendation for resolving the issue to be sound. W-2 AF, Tab 58 at 4-6. This factor also weighs in favor of the agency.

¶14     As to the third *Carr* factor, the agency asserted that, in January 2012, it proposed to terminate a GS-15 supervisory employee during his probationary period for his unprofessional remarks, but that employee was not a whistleblower. W-2 AF, Tab 53 at 78. The appellant also asserted that permanent employees committed much more serious acts of misconduct, including one who used racial slurs, but were not terminated. W-2 AF, Tab 12 at 7-8, Tab 26 at 8-9.

---

vest. *Cf. Calixto v. Department of Defense*, [120 M.S.P.R. 557](#), ¶ 14 (2014) (explaining the purposes of the probationary period for nonsupervisory employees under [5 C.F.R. § 315.803](#)(a)). This will inevitably mean that, sometimes, a probationer will lose his job when a permanent employee who commits the same or a more serious offense might not. This is not "illegal," but by design. *Cf.* [5 U.S.C. § 7511](#)(a) (excluding probationers from the statutory definition of "employee" for purposes of the Board's adverse action jurisdiction).

¶15     The third *Carr* factor involves comparing employees who are similarly and not identically situated.  *Soto*, 2022 MSPB 6, ¶ 11; *see also Whitmore*, 680 F.3d at 1373.  Nevertheless, there is a vast difference between probationary employees and permanent employees, not least of which is that they are subject to different standards governing discipline.  Permanent employees can only be disciplined for reasons that promote the efficiency of the service.  5 U.S.C. §§ 7503(a), 7513(a).  If a permanent employee is disciplined, he has the right to appeal adverse actions to the Board, provided he meets the statutory definition of "employee" set forth at 5 U.S.C. § 7511(a).   There is no statute containing standards governing the discipline of probationers and, therefore, no limits on an agency's discretion in this area so long as the agency's action does not violate some other statute, such as one of the anti-discrimination statutes or the Whistleblower Protection Act.  In other words, an agency can terminate a probationary employee for any reason or no reason, so long as that reason is not an illegal reason.  A prudent agency, therefore, ensures that it has amassed sufficient evidence to support its case, is careful to provide due process rights guaranteed by the United States Constitution, and affords a tenured employee the procedural rights set forth in 5 U.S.C. § 7513 and any other law, rule, regulation, or union contract that might be applicable in a particular case.  A probationer is entitled to none of these things.  Because an agency does not need a reason to terminate a probationer, it need not collect any evidence or prepare itself to prove anything, although it would be prudent to do so in most cases.  The fact that the law permits the agency to terminate the appellant's employment during his probationary period for any reason that is not illegal means that he is not similarly situated to permanent employees, who can only be removed for reasons that promote the efficiency of the service.

¶16     Neither party submitted evidence concerning the GS-15 probationer's termination.  Because it is the agency's burden of proof, when the agency fails to introduce relevant comparator evidence, the third *Carr* factor is effectively

removed from consideration, although it cannot weigh in favor of the agency. *Soto*, 2022 MSPB 6, ¶ 18; *see also Rickel v. Department of the Navy*, 31 F.4th 1358, 1365-66 (Fed. Cir. 2022) ("The lack of evidence on the third *Carr* factor appears neutral[.]") (internal citation omitted). We find that this factor is neutral. *See Siler v. Environmental Protection Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018) (holding that in the absence of relevant comparator evidence, the third *Carr* factor cannot favor the agency).

¶17    If the first two *Carr* factors are only supported by weak evidence, the failure to present evidence of the third *Carr* factor may prevent the agency from carrying its overall burden. *Smith*, 2022 MSPB 4, ¶ 30-31; *see also Miller v. Department of Justice*, 842 F.3d 1252, 1262-63 (Fed. Cir. 2016) (where an agency presented little or weak evidence for the first two *Carr* factors, the lack of *Carr* factor three evidence "if anything[] tends to cut slightly against the government"). In this case, we find that the absence of comparator evidence does not warrant a finding that the agency did not meet its overall burden.

¶18    In summary, we find that the appellant has not shown error in the administrative judge's well-reasoned conclusion, which is fully supported by the record, that the agency proved by clear and convincing evidence that it would have terminated the appellant during his probationary period even absent his disclosure about the halon cylinders.

The administrative judge did not abuse her discretion in ruling on the appellant's discovery motions and other procedural motions.

¶19    As soon as the agency responded to the appellant's appeal, IAF, Tabs 7-8, the appellant began filing repetitive motions for an immediate decision in his favor, IAF, Tabs 10-13. The administrative judge correctly informed the appellant that the Board lacks summary judgment authority regardless of the strength or weakness of a party's evidence. IAF, Tab 14. Despite the administrative judge's ruling, the appellant continued to file what amounted to motions for summary judgment. W-2 AF, Tab 3; Tab 12 at 4; Tab 13 at 4-5;

Tab 18; Tab 20 at 4; Tab 25 at 7; Tabs 26-27; Tabs 40-42, 44; Tab 50 at 8; Tab 52 at 4; W-3 AF, Tabs 1-2, 6, 9, 13, 17-18. Because all of the motions requested a summary ruling in the appellant's favor, the administrative judge correctly construed them as motions for summary judgment and she properly denied them. W-2 AF, Tab 45, Tab 61 at 3; *see Hessami*, 979 F.3d at 1368-69 (holding that the Board lacks summary judgment authority); *Crispin v. Department of Commerce*, 732 F.2d 919, 922 (Fed. Cir. 1984) (same).

¶20       As to discovery, the appellant requested a variety of emails related to his employment with the agency. When he deemed the agency's response inadequate, he filed a number of motions to compel, W-2 AF, Tabs 25, 34-35, which the administrative judge granted in part, W-2 AF, Tab 38. The agency then asserted that most of the relevant emails no longer existed and it provided what it still had. W-2 AF, Tab 43. The appellant disputed the agency's assertion and moved for sanctions. W-2 AF, Tab 44. After requesting and receiving more information from the agency, W-2 AF, Tabs 46, 61, the administrative judge denied the motion for sanctions, W-2 AF, Tab 61. However, she granted the appellant's request for a forensic examination of the agency's email system, provided that any such examination would take place at the appellant's expense, and would be a recoverable cost should he prevail in his appeal. W-2 AF, Tab 61 at 2, Tab 63 at 2-3, Tab 66 at 3-4.

¶21       In response to one of the appellant's motions to compel, the agency asserted that the appellant signed for receipt of three boxes of discovery documents, and it submits copies of U.S. Postal Service tracking sheets bearing the appellant's signature.[9] W-2 AF, Tab 49 at 4, 6-8. The agency further made a limited waiver of attorney-client privilege to make its discovery efforts more transparent and to reflect that agency managers performed a search and provided documents to counsel. *Id.* at 4-5, 9. The appellant, however, continued to insist, inter alia, that

[9] The package weights indicated on the tracking sheets are consistent with what a box of documents might weigh. W-2 AF, Tab 49 at 6-8.

the agency's search was inadequate and improper and that the documents he was seeking existed. The administrative judge afforded the appellant the opportunity to prove that the documents existed and obtain them. Requiring the appellant to pay the costs of the extraordinary measures required to achieve that, costs that would be recoverable if the appellant prevails in his appeal, was a reasonable exercise of the administrative judge's discretion to rule on discovery matters under 5 C.F.R. § 1201.41(b). In any event, the appellant has not shown that the administrative judge's ruling was an abuse of discretion. *Schoenrogge v. Department of Justice*, 76 M.S.P.R. 216, 221 (1997) (finding that the administrative judge has broad discretion in ruling on discovery matters and, absent a showing of abuse of discretion, the Board will not find reversible error in such rulings).

The appellant's allegations of administrative judge bias and misconduct are baseless.

¶22    As the parties' discovery dispute escalated, the appellant set conditions on his willingness to communicate with the agency, stating that he would only accept emails from the agency's representative after the agency complied with the administrative judge's discovery orders to his satisfaction and behaved in accordance with the appellant's notion of professionalism.[10]  W-2 AF, Tab 62 at 8.  After the administrative judge admonished the appellant for the second time, W-2 AF, Tabs 61, 63, to engage in respectful and cooperative interactions with the agency, the appellant moved that the administrative judge disqualify herself, and he conditioned his future participation in discovery on having a different administrative judge assigned to his case.  W-2 AF, Tab 64.  When the administrative judge denied the motion, W-2 AF, Tab 65, the appellant protested

---

[10]  The agency submitted a copy of an email it received from the appellant that stated, inter alia, "REFER TO MY JULY 8, JULY 21, JULY 24, JULY 28 AND JULY 31 PLEADINGS AND DO NOT, REPEAT, DO NOT ATTEMPT TO CONTACT ME VIA ANY METHOD OTHER TH[AN] THROUGH THE COURT."  W-2 AF, Tab 47 at 11 (capitalization in the original).

that it was improper for the administrative judge to rule on the motion herself and renewed his motion, specifying that it was to be decided by a "higher authority" than the administrative judge,[11] W-2 AF, Tab 67. The administrative judge construed this motion as a motion to certify her ruling for interlocutory appeal, which she correctly denied because it did not meet the criteria for certification under 5 C.F.R. § 1201.91. W-2 AF, Tab 68. The appellant, however, continued to file motions for the administrative judge to disqualify herself. W-2 AF, Tabs 69, 71; W-3 AF, Tabs 1-2, 6, 13.

¶23    The appellant's allegations of administrative judge misconduct reflect an intense disappointment with her rulings on his various motions. However, an administrative judge's case-related rulings, even if erroneous, are insufficient to establish bias warranting her recusal or disqualification from further involvement in the appeal. *King v. Department of the Army*, 84 M.S.P.R. 235, ¶ 6 (1999). Here, the appellant has not shown that the administrative judge abused her discretion in any of her discovery rulings or rulings on his numerous motions, but even if he had, his disagreement with those rulings, however vociferous, is insufficient to overcome the presumption of honesty and integrity that accompanies administrative adjudicators. *Oliver v. Department of Transportation*, 1 M.S.P.R. 382, 386 (1980).

The administrative judge's decision to cancel the hearing was an appropriate exercise of her discretion.

¶24    The administrative judge dismissed this appeal without prejudice to its refiling twice for reasons that are beyond the scope of this order. When the appellant refiled his appeal after the second dismissal without prejudice, he renewed his demands for summary judgment and for the administrative judge's

---

[11] In another example of the appellant's attempt to prescribe his own set of procedures, he stated, "THIS JUDGE IS NOT, REPEAT NOT ALLOWED TO CERTIFY HER OWN DISMISSAL REFUSAL, PERIOD." W-2 AF, Tab 67 at 5 (capitalization in the original). The Board's regulations, however, permit the administrative judge to do precisely that. 5 C.F.R. § 1201.42.

disqualification. W-3 AF, Tabs 1-2. He further demanded an investigation into the administrative judge's alleged misconduct and an award of interim compensation. W-3 AF, Tab 1 at 4. The administrative judge then issued a routine Acknowledgment Order, a routine Hearing Order, and a routine Notice of Rescheduling in quick succession. W-3 AF, Tabs 3-5. The appellant responded to these with a pleading entitled "Correction to Recent Orders" that began:

> **NOW COMES THE APPELLANT TO INFORM THE COURT,** [the administrative judge] **AND THE MSPB INSPECTOR GENERAL (AND TO MOTION, ALTHOUGH NOT NECESSARY DUE TO THE ORDERS' STANDING ILLEGALISTIES) AND DEEM THE 20 AND 24 FEB, 2015 COURT ORDERS NULL AND VOID. THEY HAVE NO LEGAL BEARING AND IF ATTEMPTED TO BE CARRIED OUT AS WRITTEN AND WITHOUT** [the administrative judge's] **IMMEDIATE REMOVAL AND A FULL, INTERNAL INVESTIGATION . . . THESE ORDERS WILL NOT BE CONSIDERED LEGAL AND/OR VALID IN ANY COURT OR JURISDICTION AT ANY LEVEL, AT ANY TIME.**

W-3 AF, Tab 6 at 4 (bold and capitalization in the original). He also stated, "**IN THIS CASE, MY CASE, AND ONLY AFTER** [the administrative judge's] **IMMEDIATE REMOVAL AND THE SUBSEQUENT INVESTIGATION (THAT I MOTIONED FOR ON NUMEROUS OCCASIONS), WILL THERE BE ANY COURT ORDERS WRITTEN AND EXECUTED**. . . ." *Id.* at 5 (bold and capitalization in the original; yellow highlighting omitted). Clearly, the appellant has neither the authority to correct an administrative judge's order nor the authority to declare whether an order will be considered legal and valid.

¶25 The administrative judge informed the appellant that it appeared that he was refusing to participate in the further adjudication of his appeal, she warned him that any refusal to comply with her orders could result in sanctions, and she scheduled a telephonic status conference. W-3 AF, Tab 7. The appellant responded by accusing the administrative judge of having the "gall" to threaten sanctions, and stated "**THIS CASE WILL NOT GO FORWARD WITHOUT**

**HER IMMEDIATE REMOVAL**. . . .'"  W-3 AF, Tab 9 at 5 (bold and capitalization in the original; yellow highlighting omitted).

¶26    The appellant did not appear for the scheduled status conference, and the administrative judge issued an Order to Show Cause why the appeal should not be dismissed for failure to prosecute based on the appellant's refusal to participate in the adjudication of his appeal. W-3 AF, Tab 10. In response, the appellant denied that he was refusing to participate and asserted that he would participate in a fair and unbiased proceeding after the administrative judge was disqualified and the agency provided all of the discovery materials he had requested. W-3 AF, Tab 11. The administrative judge decided not to dismiss the appeal for failure to prosecute. Instead, she noted that the appellant stated he would not participate unless a different administrative judge were assigned to the appeal and, because the appeal was not going to be reassigned to another administrative judge, she canceled the hearing, set a deadline for final submissions, and decided the appeal based on the written record. W-3 AF, Tab 12.

¶27    The Board does not deny appellants' requested hearings as a sanction except in extraordinary cases. *Sims v. U.S. Postal Service*, 88 M.S.P.R. 101, ¶¶ 7-8 (2001). We have carefully reviewed the record and we agree with the administrative judge that the appellant's refusal to cooperate in the prosecution of his appeal created a situation in which there was no realistic chance that a hearing could actually take place. The appellant attempted to control the proceedings by dictating which procedures he would and would not follow, he filed numerous duplicative motions seeking reconsideration of rulings the administrative judge stated she would not reconsider, he refused to acknowledge that the administrative judge had any authority once he decided she was biased, and his pleadings were replete with disrespectful and even insulting language aimed at the agency, the agency's representative, and the administrative judge. Under the circumstances of this case, we agree with the administrative judge that cancelling the hearing and deciding the appeal on the written record was the best option

available for moving the appeal forward. *See Bilger v. Department of Justice*, 33 M.S.P.R. 602, 607 (1987) (finding that, once an administrative judge imposes a sanction, the Board ordinarily will not disturb such a determination unless it is shown that the administrative judge abused her discretion or that her ruling adversely affected a party's substantive rights), *aff'd*, 847 F.2d 842 (Fed. Cir. 1988) (Table).

The appellant's arguments on review are without merit.

¶28        The appellant asserts on review that the Board must reverse the initial decision because the agency's representative, and not the administrative judge, drafted the initial decision.  PFR File, Tab 1 at 4-5.  He contends that the initial decision shows that the administrative judge never read any of his pleadings, and he alleges that she could not possibly have included so much detail in the decision without help from the agency because the details were not available to her in the record.  *Id.* at 5-6.  The appellant offers no evidence to support these accusations.  Based on our review, we find that the administrative judge has thoroughly supported her conclusions with precise citations to the record and accurate applications of pertinent case law.  The appellant identifies no statement in the decision that cannot be supported by something in the evidentiary record, and we discern none.

¶29        The appellant also renews on review his claim that the administrative judge was biased, but these assertions are without merit for the reasons set forth above. Accordingly, we find that the administrative judge properly denied the appellant's request for corrective action.

## NOTICE OF APPEAL RIGHTS[12]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[12] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of

discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[13] The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

---

[13] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:        /s/ for

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.