# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

CHRISTOPHER R. GUNDERSON,
      Appellant,

        v.

DEPARTMENT OF THE NAVY,
      Agency.

DOCKET NUMBER
SF-1221-16-0159-W-1

DATE: June 16, 2023

# THIS ORDER IS NONPRECEDENTIAL[1]

Christopher R. Gunderson, Ashburn, Virginia, pro se.

Michelle J. Hirth, Esquire, Monterey, California, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## REMAND ORDER

¶1      The appellant has filed a petition for review of the initial decision, which dismissed his individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the administrative judge's findings that the appellant failed to

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

nonfrivolously allege that he made a protected disclosure and that his disclosure was a contributing factor to the personnel action, and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2    The appellant was a nontenure track Faculty Associate Researcher with the Naval Postgraduate School (NPS) in Monterey, California.  Initial Appeal File (IAF), Tab 1 at 8, Tab 3 at 6.  He held a series of time-limited excepted-service appointments from 2004 until May 30, 2015, when the agency decided not to renew his appointment.  IAF, Tab 1 at 8, Tab 3 at 6.  Continuation in the appellant's position was contingent on the receipt of funding from his sponsor, the Defense Intelligence Agency (DIA), which was secured through a funding agreement called the Interservice Support Agreement (ISSA).  IAF, Tab 3 at 31.

¶3    The appellant alleged that, as of fall 2014, appointments for all nontenure track appointments were automatically extended every 60 days.  *Id.* at 48.  He alleged that, in late-fiscal year (FY) 2014, NPS approved his research proposal for FY2015, including a statement of work and budget for his salary for all of FY2015.  IAF, Tab 1 at 13, 18, Tab 3 at 7, 15-16.  However, although NPS extended his term appointment into FY2015, NPS and DIA did not execute the ISSA before FY2015 began, resulting in a lapse of funding for his position beginning October 1, 2014.  IAF, Tab 1 at 14, Tab 3 at 22-24.  Believing that finalization of the agreement was imminent, the appellant went on leave status, first exhausting his paid leave and then using unpaid leave.  IAF, Tab 3 at 23-24.  In March 2015, DIA executed the ISSA and delivered it to NPS for counter-signature.  *Id.* at 24-25.  The appellant alleged that the NPS president refused to sign the ISSA, purportedly deciding, in or around April 2015, not to renew the appellant's position for FY2016, meaning his appointment would end on September 30, 2015.  *Id.*  NPS allegedly proposed a new ISSA, which DIA signed on May 28, 2015.  IAF, Tab 1 at 14, Tab 3 at 25.

¶4     In the meantime, on May 12, 2015, while still on leave, the appellant filed an administrative grievance alleging that the NPS president had abused his authority and wasted Government resources by refusing to sign, or delaying signature to, the ISSA to secure FY2015 funding for the appellant's position. IAF, Tab 3 at 22-27.  He alleged that the president "reneged on the prior agreement by refusing to sign the ISSA that his staff helped prepare." *Id.* at 24. On May 29, 2015, the appellant's first-level supervisor denied the grievance, stating that it raised contractual matters that could not be grieved under the administrative grievance procedures, and in any event, the appellant's appointment was contingent upon funding that had not been received. *Id.* at 30-32.  On May 30, 2015, the agency allowed the appellant's time-limited appointment to expire, 4 months before the end of the fiscal year, when the appellant was expecting the appointment to end based on prior communications from the NPS president.[2]  IAF, Tab 3 at 8, 24-25.

¶5     The appellant filed a complaint with the Office of Special Counsel (OSC) seeking corrective action based on the agency's premature termination of his appointment in retaliation for raising allegations of waste and abuse in his administrative grievance.  IAF, Tab 1 at 9-23.  About 5 months later, without having received an OSC close-out letter, he filed this Board appeal.  *Id.* at 1-23. The administrative judge issued a jurisdictional order and, later, an order to show cause.  IAF, Tabs 10, 16.  The appellant responded to both orders.  IAF, Tabs 11, 13, 17.  Without holding a hearing, the administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction.  IAF, Tab 19, Initial Decision (ID) at 1-12.  The administrative judge found that the appellant had exhausted his administrative remedies with OSC but that he failed to

---

[2] Although the Standard Form 50 terminating the appellant's appointment was effective May 30, 2015, the appellant alleges that he did not learn that his appointment was terminated until June 2015.  IAF, Tab 1 at 5, 14.

nonfrivolously allege that he engaged in protected activity or made a protected disclosure under 5 U.S.C. § 2302. ID at 5-9. The administrative judge further found that the appellant failed to make a nonfrivolous allegation that his alleged protected activity was a contributing factor in the agency's decision to terminate his appointment. ID at 9-12. The appellant has filed a petition for review and the agency has filed a response. Petition for Review (PFR) File, Tabs 2, 4.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶6        Under the Whistleblower Protection Enhancement Act of 2012 (WPEA), the Board has jurisdiction over an IRA appeal if the appellant has exhausted his administrative remedies before OSC and makes nonfrivolous allegations that (1) he made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Edwards v. Department of Labor*, 2022 MSPB 9, ¶ 8; *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016). As explained by the U.S. Court of Appeals for the Federal Circuit, at the jurisdictional stage, the appellant need only assert "allegations that are 'not vague, conclusory, or facially insufficient,' and that the [appellant] 'reasonably believe[s]' to be true." *Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1367 (Fed. Cir. 2020) (quoting *Piccolo v. Merit Systems Protection Board*, 869 F.3d 1369, 1371 (Fed. Cir. 2017)). Thus, the appellant makes a nonfrivolous allegation if he alleges "sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Hessami*, 979 F.3d at 1369. The Board may not deny jurisdiction by crediting the agency's interpretation of the evidence. *Id.* Any doubt or ambiguity as to whether the appellant has made a nonfrivolous allegation should be decided in favor of affording the appellant a hearing. *Huffman v. Office of Personnel Management*, 92 M.S.P.R. 429, ¶ 13 (2002).

¶7        We find no reason to disturb the administrative judge's finding that the appellant exhausted his administrative remedies with OSC before filing this appeal. ID at 8-9. His OSC complaint identified the protected activity or disclosure as his May 12, 2015 grievance and the personnel action as the termination of his appointment on May 30, 2015.[3] IAF, Tab 1 at 9-23. We agree with the administrative judge's finding that the appellant did not nonfrivolously allege that he engaged in protected activity pursuant to 5 U.S.C. § 2302(b)(9)(A)(i) because the subject of his grievance was explicitly excluded from NPS's administrative grievance procedures, and therefore it was not a grievance right that was granted by law, rule, or regulation as required for coverage under 5 U.S.C. § 2302(b)(9)(A)(i). ID at 5-7; *see* Secretary of the Navy Instructions (SECNAVINST) 12771.2, Department of the Navy Administrative Grievance System ¶ 3.f(11) (July 30, 2010)[4] (stating that the termination of a time-limited excepted appointment is exempt from the grievance procedures); *see also* 5 U.S.C. § 2302(b)(9)(A)(i) (stating that an agency may not take, or fail to take, a personnel action because of "the exercise of any appeal, complaint or grievance right granted by any law, rule, or regulation"). However, we disagree with the administrative judge's findings that the appellant failed to nonfrivolously allege that he made a protected disclosure pursuant to 5 U.S.C. § 2302(b)(8) and

---

[3] The agency argues that the appellant exhausted a claim that he engaged in protected activity under 5 U.S.C. § 2302(b)(9) but not a claim that he made a protected disclosure under section 2302(b)(8). PFR File, Tab 4 at 5-6. We disagree. To prove exhaustion, the appellant need only demonstrate that he provided OSC with a sufficient basis to pursue an investigation. *See Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 10. The appellant alleged in his OSC complaint that NPS retaliated against him for the allegations set forth in his grievance, thereby implicating both 5 U.S.C. § 2302(b)(8) and (b)(9) and providing OSC with a sufficient basis to pursue an investigation. IAF, Tab 1 at 12.

[4] The Navy Instructions and Regulations that are referenced in this Order are available by searching the title number on the Secretary of the Navy's website at www.secnav.navy.mil.

that he failed to nonfrivolously allege that his protected disclosure was a contributing factor to the termination of his appointment, as set forth below. ID at 7-9.

The appellant nonfrivolously alleged that he made a protected disclosure pursuant to 5 U.S.C. § 2302(b)(8).

¶8    The appellant alleged that, between March and June 2015, he disclosed in phone and email communications, and in his administrative grievance, that the NPS president abused his authority and wasted funds when he failed to accept and spend obligated funds from DIA. IAF, Tab 3 at 22-24, Tab 11 at 9-11. He asserted that, by NPS's acceptance of the research proposal and statement of work for FY2015, it obligated itself to accept funds from DIA to cover the planned work. IAF, Tab 3 at 7, 14-15. He alleged that NPS's unilateral failure to accept the funds, owing to what he believed to be unnecessary changes to the ISSA, caused the money to be wasted because it could not be reallocated. IAF, Tab 3 at 7, Tab 11 at 16, Tab 17 at 6. On review, the appellant asserts that the failure to accept the obligated funds was against the taxpayers' intended use. PFR File, Tab 2 at 17. The appellant also asserted, in his email communications with the agency, that the agency violated its administrative grievance system policies while processing his grievance. IAF, Tab 11 at 9-11.

¶9    In the initial decision, the administrative judge found that the appellant failed to nonfrivolously allege that he disclosed an abuse of authority or a gross waste of funds. ID at 8. We agree with those findings for the reasons stated in the initial decision.

¶10    However, as explained below, we find that the appellant nonfrivolously alleged that he disclosed a violation of law, rule, or regulation. Specifically, it appears that the appellant may have raised an allegation before the administrative judge that he disclosed, via his grievance and related communications, a violation of law, rule, or regulation. This allegation was not specifically addressed in the

initial decision.[5]  IAF, Tab 11 at 8-9, 11.  In his pleadings, the appellant identified various internal Navy policies that he alleges the NPS president violated, including Article 1023 of Navy Regulations, which states that "[p]ersons in authority are forbidden to injure their subordinates by tyrannical or capricious conduct, or by abusive language," and the Navy Core Values, which state, in part, that Navy personnel are required to exhibit "virtue, honor, patriotism, and subordination."  IAF, Tab 11 at 8; *see* U.S. Navy Regulations, Chapter 10, Precedence, Authority, and Command, Section 2, Article 1023; SECNAVINST 5350.15D, Department of the Navy Core Values Charter and Ethics Training, ¶ 6 (Apr. 18, 2018).[6]  Assuming these regulations apply to the NPS president, we find that the appellant failed to nonfrivolously allege that he held a reasonable belief that failing to sign, or delaying signature to, the ISSA violated these provisions. Although the appellant has stated that the Navy Core Values "would require that [a]gency leaders avoid 'waste' and 'abuse,'" we find nothing in the language of SECNAVINST 5350.15D that would support this assertion.  IAF, Tab 11 at 7.

¶11    Notwithstanding, the appellant nonfrivolously alleged that he disclosed what he reasonably believed to be violations of the agency's administrative grievance policies, which are set forth in SECNAVINST 12771.2.  IAF, Tab 11 at 9-11.  For this reason, we find that the appellant has nonfrivolously alleged that

---

[5] The appellant did not specifically allege to OSC that he disclosed a violation of law, rule, or regulation.  IAF, Tab 1 at 12-13, 17.  The Board has held, however, that it will not require that an appellant correctly label, in a whistleblower complaint to OSC, the category of wrongdoing under 5 U.S.C. § 2302(b)(8) that might be implicated by a particular set of facts and that the appellant's claim should be construed broadly at the jurisdictional stage.  *See El v. Department of Commerce*, 123 M.S.P.R. 76, ¶ 11 (2015), *aff'd*, 663 F. App'x 921 (Fed. Cir. 2016).  Further, an appellant may give a more detailed account of his whistleblowing activities before the Board than he did to OSC. *Chambers*, 2022 MSPB 8, ¶ 10.

[6] In his pleadings, the appellant referenced SECNAVINST 5350.15C.  IAF, Tab 11 at 8. That instruction was replaced by SECNAVINST 5350.15D, effective April 2018.  *See* SECNAVINST 5350.15D ¶ 2.

he reasonably believed that he disclosed a violation of a rule and an abuse of authority via his administrative grievance and related communications. *See Rusin v. Department of the Treasury*, 92 M.S.P.R. 298, ¶¶ 14-19 (2002) (finding that an allegation of a violation of a Procurement Instruction Memorandum constituted a nonfrivolous allegation of a violation of a rule); *Loyd v. Department of the Treasury*, 69 M.S.P.R. 684, 687-89 (1996) (holding that allegations of impropriety in the handling of a grievance can constitute allegations of an abuse of authority).

The appellant nonfrivolously alleged that his protected disclosure was a contributing factor to the agency's nonrenewal of his appointment on May 30, 2015.

¶12     The appellant may demonstrate that a protected disclosure was a contributing factor in a personnel action through circumstantial evidence, including, but not limited to, evidence that the official taking the personnel action knew of the protected disclosure and that the personnel action occurred within a period of time such that a reasonable person could conclude that the protected disclosure was a contributing factor in the personnel action. 5 U.S.C. § 1221(e)(1); *see Easterbrook v. Department of Justice*, 85 M.S.P.R. 60, ¶ 7 (2000). An appellant need only raise a nonfrivolous allegation that the fact of, or content of, the protected disclosure was one factor that tended to affect the personnel action in any way. *Baldwin v. Department of Veterans Affairs*, 113 M.S.P.R. 469, ¶ 22 (2010).

¶13     The appellant has alleged that the provost and/or the president made the decision to allow his time-limited appointment to expire on May 30, 2015. IAF, Tab 1 at 8, 20, Tab 17 at 5-6. He alleged that the president likely had knowledge of his grievance because he was the subject of the grievance and because NPS's general counsel allegedly told the appellant that the president "coordinated" the grievance. IAF, Tab 1 at 20. The appellant also alleged that, due to the serious nature of the allegations against the president, it is likely that the allegations

would have been forwarded to the president and the provost. IAF, Tab 17 at 5, 15; PFR File, Tab 2 at 21-22. He alleged that agency policy encourages allegations of waste and abuse, like those raised in the appellant's grievance and related communications, to "be forwarded up the chain of command." IAF, Tab 17 at 7. Regarding the timing of the personnel action in relation to the appellant's protected disclosure, the relevant Standard Form 50 shows that, about 2 weeks after the appellant filed his grievance, the agency decided not to renew his appointment past May 30, 2015, which was 4 months earlier than previously announced.[7] IAF, Tab 1 at 8, Tab 3 at 7-8, 24-25. We therefore find that the appellant has nonfrivolously alleged that his protected disclosure was a contributing factor to the nonrenewal of his appointment on May 30, 2015. *See, e.g.*, *Mithen v. Department of Veterans Affairs*, 119 M.S.P.R. 215, ¶ 12 (2013) (finding that the appellant established contributing factor when the personnel action occurred 2 weeks after the protected activity).

---

[7] We acknowledge that the disclosure regarding the agency's processing of the grievance postdates the effective date of the termination of the appellant's appointment. IAF, Tab 1 at 8, Tab 11 at 10-11. However, there is a question about when the decision was made to allow the appellant's appointment to expire. IAF, Tab 1 at 8, Tab 3 at 8. Accordingly, we find that the appellant has met his burden at the nonfrivolous allegation stage, and the question of whether the disclosure was made prior to the decision not to renew the appellant's appointment must be resolved at the merits stage.

**ORDER**

For the reasons discussed above, we find that the appellant has established jurisdiction over his IRA appeal. Accordingly, we remand this case to the regional office for a hearing on the merits in accordance with this Remand Order.


FOR THE BOARD:                                    /s/ for
                                    _____
                                    Jennifer Everling
                                    Acting Clerk of the Board

Washington, D.C.