## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

MEGAN MAYO,
            Appellant,

v.

DEPARTMENT OF THE NAVY,
            Agency.

DOCKET NUMBER
SF-1221-20-0719-W-1

DATE: April 11, 2024

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>Chalmers Johnson</u>, Esquire, Port Orchard, Washington, for the appellant.

<u>David Thayer</u>, Esquire, and <u>Joshua J. Roever</u>, Esquire, Bremerton, Washington, for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

## REMAND ORDER

The appellant has filed a petition for review of the initial decision, which denied her request for corrective action in her individual right of action (IRA) appeal. For the reasons discussed below, we GRANT the appellant's petition for review. We discern no basis for disturbing the findings in the initial decision as to the identified allegations of reprisal, but we nevertheless find it necessary for

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the administrative judge to consider an additional allegation of reprisal based on a perceived whistleblower theory, which was not addressed in the initial decision. We therefore VACATE the initial decision and REMAND the appeal to the Western Regional Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

The appellant was appointed to a WG-1 Helper Trainee (Marine Machinery Mechanic) position at Puget Sound Naval Shipyard on August 6, 2018, subject to the successful completion of a 2-year probationary period. Initial Appeal File (IAF), Tab 7 at 33-34. On March 20, 2020, at the beginning of the COVID-19 pandemic, the appellant emailed the Base Commander of the shipyard and a union representative, requesting that the command start paying the essential employees hazard or environmental pay in light of the serious and substantial risks they faced in continuing to report to work. Petition for Review (PFR) File, Tab 1 at 16. Two days later, on March 22, 2020, the appellant emailed a member of Congress complaining about the lack of safety precautions at the shipyard to combat the spread of COVID-19, including a lack of hand sanitizer, limited hot running water, and the inability to social distance while working at the shipyard.[2] IAF, Tab 5 at 15-16. That same day, she posted the contents of the email to the congressman on her social media page. *Id*. at 18-19.

The following day, March 23, 2020, the appellant came to work wearing a sweatshirt that read "Shipyard before self" on one side, which was a quote of a statement made by the Base Commander at the 2019 Shipyard Change of Command Ceremony. *Id*. at 31. On the other side, the sweatshirt stated, "1 in 5 people between 20-44 will require hospitalization" and "1 in 10 ICU patients are between the ages of 20-44," quoting "CDC 2020." *Id*. When the appellant

---

[2] The appellant explained that her previous experience in nursing made her "intimately familiar" with the "dire warnings" coming from the medical community regarding the dangers of COVID-19. IAF, Tab 5 at 15.

wore the sweatshirt again the next day, her supervisor instructed her to remove it and she complied, turning the sweatshirt inside out. *Id.* at 27-28; Hearing Record (HR) (testimony of the appellant's supervisor). That day, the appellant emailed the Shipyard Superintendent regarding the sweatshirt, stating that "[her] hoodie [was] making a statement about the current pandemic our country and the world face and how the yard is handling it . . . " and reiterating her claims regarding the employees' entitlement to hazard or environmental pay. IAF, Tab 5 at 27-28. The appellant also posted a photo of her sweatshirt on her social media page, explaining that she "made a statement" about the lack of effort by the shipyard in the face of the pandemic, including, among other things, that she believed the employees who continued to report should receive hazard or environmental pay. *Id*. at 30-31.

The agency conducted a pre-action investigation into the appellant's action, i.e., wearing the sweatshirt. IAF, Tab 7 at 29-32. Subsequently, the deciding official terminated the appellant during her probationary period, effective March 31, 2020, for failure to demonstrate fitness and qualifications for continued employment based on a charge of conduct unbecoming a Federal employee. IAF, Tab 5 at 33-35, 99.

The appellant filed a complaint with the Office of Special Counsel (OSC) alleging that her termination was the result of whistleblower reprisal. IAF, Tab 9 at 5-27. After OSC closed its investigation, the appellant filed an IRA appeal with the Board, alleging that she was terminated due to her protected disclosures, specifically: (1) disclosing to management officials that a supervisor had shared confidential information with her and told her not to tell anyone; (2) wearing a sweatshirt to work displaying a quote from the Base Commander and facts about COVID-19; (3) filing a formal complaint with the Occupational Safety and Health Administration (OSHA) about the lack of adequate safety precautions at the shipyard against the spread of COVID-19; (4) posting her OSHA complaint on social media; and (5) writing a letter of complaint to her member of Congress

about the lack of precautions being taken at the shipyard to protect workers from COVID-19.[3]  IAF, Tab 5 at 5-6.

After finding jurisdiction over the appeal and holding a hearing on the merits, the administrative judge issued an initial decision denying the appellant's request for corrective action.  IAF, Tab 10 at 1-3; Tab 31, Initial Decision (ID).  Specifically, the administrative judge determined that disclosures 1, 2, and 4, including the sweatshirt disclosure, were not protected, and while the third disclosure may be protected, the appellant failed to establish that it was a contributing factor to her termination.  ID at 11-15.  Additionally, the administrative judge found that the appellant established that the fifth disclosure, i.e., the letter to the member of Congress, was protected because it was a disclosure made to Congress regarding alleged violations of law, rule, regulation, or a substantial and specific danger to public health and safety.  ID at 15.  After finding that the appellant's protected disclosure was a contributing factor in her termination, the administrative judge found that the agency had established by clear and convincing evidence that it would have terminated the appellant absent the whistleblowing activity.  ID at 15-22.  Thus, she denied the appellant's request for corrective action.  ID at 22.

## DISCUSSION OF ARGUMENTS ON REVIEW

On review, the appellant argues that the administrative judge erred in finding that her sweatshirt was not a protected disclosure, asserting that the agency knew, due to her emails and social media posts, that the sweatshirt was worn in protest of the lax COVID-19 protections and the lack of hazard and

---

[3] The appellant asserted that she made a sixth disclosure, i.e., a complaint about safety to management when she worked on the Sail Team, which was not accepted by the administrative judge.  IAF, Tab 5 at 6, Tab 10 at 2.  Although the administrative judge did not explain why she rejected this disclosure, we surmise that it is because the appellant failed to show that she exhausted the claim in front of OSC.  IAF, Tab 9 at 5-27.  Nevertheless, because the appellant did not raise an objection to this exclusion below or on review, and it appears that she failed to exhaust this disclosure with OSC, we do not address it further.

environmental pay. PFR File, Tab 1 at 8-12. The agency has responded in opposition to the appellant's petition for review. PFR File, Tab 3.

The record supports the administrative judge's findings, and we discern no reason to disturb them. However, as discussed below, we find that the appellant has established jurisdiction over her IRA appeal and we remand accordingly. *See Ney v. Department of Commerce*, 115 M.S.P.R. 204, ¶ 7 (2010) (stating that the Board's jurisdiction is always before the Board and can be raised by the parties or sua sponte by the Board at any time).

The Board has jurisdiction over an IRA appeal if the appellant exhausts her administrative remedies before the Office of Special Counsel (OSC) and makes nonfrivolous allegations[4] that: (1) she made a disclosure described under 5 U.S.C. § 2302(b)(8), or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). 5 U.S.C. §§ 1214(a)(3), 1221(e)(1); *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001). For the first element, engaging in whistleblowing activity by making a protected disclosure, the Board has found that an individual who is perceived as a whistleblower is still entitled to the protections of the Whistleblower Protection Act, even if she has not made protected disclosures. *King v. Department of Army*, 116 M.S.P.R. 689, ¶ 6 (2011).

The analysis of whether an appellant was actually a whistleblower is different from the analysis of whether an appellant was perceived as a whistleblower. In cases falling under the former category, the Board will focus its analysis on the appellant's perceptions and the disclosures themselves, i.e., whether she reasonably believed that her disclosures evidenced the type of wrongdoing listed under 5 U.S.C. § 2302(b)(8). *Id.,* ¶ 8. In cases falling under

---

[4] A nonfrivolous allegation is an assertion that, if proven, could establish the matter at issue. 5 C.F.R. § 1201.4(s); *see Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1364, 1369 (Fed. Cir. 2020).

the latter category, the Board will focus its analysis on the agency's perceptions, i.e., whether the agency officials involved in the personnel actions at issue believed that the appellant made or intended to make disclosures that evidenced the type of wrongdoing listed under 5 U.S.C. § 2302(b)(8). *Id.* In those cases, the issue of whether the appellant actually made protected disclosures is immaterial; the issue of whether the agency perceived the appellant as a whistleblower will essentially stand in for that portion of the Board's analysis in both the jurisdictional and merits stages of the appeal. Therefore, to establish jurisdiction over an IRA appeal alleging that the agency retaliated against an appellant based on its perception that she was a whistleblower, the appellant must show that she exhausted her remedies before OSC, and make a nonfrivolous allegation that the agency perceived her as a whistleblower, and that the agency's perception was a contributing factor in its decision to take or not take the personnel action at issue. *Id.*, ¶ 9.

We first find that the appellant exhausted her administrative remedies before OSC. The Board, in *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶¶ 10-11, clarified the substantive requirements of exhaustion. The requirements are met when an appellant has provided OSC with a sufficient basis to pursue an investigation. The Board's jurisdiction is limited to those issues that were previously raised with OSC. However, appellants may give a more detailed account of their whistleblowing activities before the Board than they did to OSC. *Id.* Appellants may demonstrate exhaustion through their initial OSC complaint; evidence that they amended the original complaint, including but not limited to OSC's determination letter and other letters from OSC referencing any amended allegations; and their written responses to OSC referencing the amended allegations. *Id.*

In her OSC complaint, the appellant alleged that she was terminated for, among other things, wearing a sweatshirt to work with a quotation from the

Shipyard Commander and COVID-19 statistics from the Center for Disease Control. IAF, Tab 1 at 9, Tab 9 at 13. The appellant alleged in her complaint that agency officials told her to "take [the sweatshirt] off, change or cover it," and that subsequently, the agency investigated her "over the shirt." IAF, Tab 9 at 13, 15. The appellant further contended in her OSC complaint that the agency retaliated against her because the CDC statistics displayed on her sweatshirt were "alarming." *Id*. at 15. Under the circumstances, when the appellant has alleged in her OSC complaint agency reactions and responses to the sweatshirt incident that occurred prior to the termination, we find that the appellant's OSC complaint contained an allegation that she was perceived as a whistleblower. Therefore, the appellant exhausted her administrative remedies as to this claim.

Next, we find that the appellant made a nonfrivolous allegation that agency officials involved believed that the appellant made or intended to make disclosures that evidenced the type of wrongdoing listed under 5 U.S.C. § 2302(b)(8). As set forth above, the appellant alleged that, when the appellant wore the sweatshirt on March 24, 2020, her supervisor instructed her to remove it. IAF, Tab 5 at 27. On the same date, right after she wore the sweatshirt, the appellant emailed the Shipyard Superintendent that her sweatshirt was intended to "mak[e] a statement" regarding "how the yard is handling" the pandemic and included a direct reference to the lack of hazard or environmental pay. *Id*. at 27-28. Thereafter, the agency immediately conducted a pre-action investigation into the sweatshirt incident. IAF, Tab 7 at 29-32. The deciding official testified that the sweatshirt "obviously" played a role in the termination decision. HR (testimony of deciding official). For purposes of our jurisdictional analysis at this stage in the proceedings, we find that the appellant nonfrivolously alleged that the agency at least perceived the appellant as a whistleblower given the nature of the appellant's sweatshirt disclosure and agency officials' knowledge of the same. *See Bradley v. Department of Homeland Security*, 123 M.S.P.R. 547, ¶ 8 n.5 (2016) (finding that the appellant nonfrivolously

alleged that the agency perceived him as a whistleblower based on his supervisor's disclosure of information attributable to the appellant); *Mausser v. Department of the Army*, 63 M.S.P.R. 41, 44 (1994) (determining that the agency may have perceived the appellant as a whistleblower to the extent that the agency knew of the list of "waste, fraud, and abuse," "safety issues," and violation of "government regulations" and the appellant's intention to disclose it); *Thompson v. Farm Credit Administration*, 51 M.S.P.R. 569, 581-82 (1991) (determining that the agency's Chairman perceived the appellant to be "a dangerous proponent of a view that could prove embarrassing—possibly evidencing mismanagement and abuse of discretion").

Furthermore, we find that the appellant nonfrivolously alleged that the agency's perception was a contributing factor in her termination, as agency officials launched an investigation of the appellant wearing the sweatshirt, IAF, Tab 7 at 29-32, and she was terminated a week after wearing the sweatshirt, IAF, Tab 5 at 33-35, 99. Thus, the appellant has met the knowledge/timing test and satisfies the contributing factor standard. *See Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 13 (2016) (stating that an appellant meets the contributing factor criterion by meeting the knowledge/timing test).

Because the appellant has established jurisdiction over this claim, we remand this matter to the Western Regional Office for further adjudication. The appellant is entitled to a hearing on the merits to determine if her status as a perceived whistleblower was a contributing factor in her termination. *See Rusin v. Department of the Treasury*, 92 M.S.P.R. 298, ¶ 20 (2002) (stating that, when the test for establishing the Board's IRA jurisdiction has been met, the appellant is entitled to a hearing on the merits of their claim).

## ORDER

For the reasons discussed above, we remand this case to the Western Regional Office for further adjudication in accordance with this Remand Order.[5]

FOR THE BOARD:

*Gina K. Grippando*

_____
Gina K. Grippando
Clerk of the Board

Washington, D.C.

---

[5] In the remand initial decision, the administrative judge may reincorporate prior findings as appropriate, consistent with this Remand Order.