**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| JAMES A. HEALY, | DOCKET NUMBER |
| Appellant, | DE-1221-18-0037-W-2 |
| v. | |
| DEPARTMENT OF HOMELAND SECURITY, | DATE: June 28, 2024 |
| Agency. | |

# THIS ORDER IS NONPRECEDENTIAL[1]

<u>James A. Healy</u>, Wickenburg, Arizona, pro se.

<u>Beverlei E. Colston</u>, Esquire, Irving, Texas, for the agency.

<u>Sung Lee</u>, Houston, Texas, for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner did not participate in the adjudication of this appeal.

## REMAND ORDER

The appellant has filed a petition for review of the initial decision, which dismissed his individual right of action (IRA) appeal for lack of jurisdiction. For

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and REMAND the case to the Denver Field Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

The appellant was employed as a Supervisory Criminal Investigator with the agency's Immigration and Customs Enforcement (ICE) department at the Homeland Security Investigations (HSI) office in Deming, New Mexico (HSI Deming). *Healy v. Department of Homeland Security*, MSPB Docket No. DE-1221-18-0037-W-1, Initial Appeal File (W-1 IAF), Tab 1 at 1; *Healy v. Department of Homeland Security*, MSPB Docket No. DE-1221-18-0037-W-2 Appeal File (W-2 AF), Tab 21 at 150. HSI Deming is under the supervision of the Special Agent in Charge (SAC) of HSI El Paso, Texas. W-2 AF, Tab 22 at 22.

According to the appellant, on April 21, 2015, he attended a meeting with management officials, including the HSI El Paso SAC, the Deputy Special Agent in Charge (DSAC), and the Assistant Special Agent in Charge (ASAC). W-1 IAF, Tab 7 at 4. During the meeting, those officials advised, among other things, that there would be personnel restructuring at HSI Deming that would reduce the manpower stationed there and reallocate it to nearby offices. *Id.* The appellant expressed his concern that, if the restructuring were effected, ICE would have wasted nearly $3 million to expand HSI Deming just 2 years earlier. W-1 IAF, Tab 1 at 5, Tab 7 at 4. The appellant reiterated these concerns the next day, April 22, 2015, with his supervisor, the ASAC. W-1 IAF, Tab 1 at 5, Tab 7 at 4.

On May 13, 2015, the appellant reported these same concerns to the agency's Office of Inspector General (OIG). W-1 IAF, Tab 7 at 4, 12, 15. According to the appellant, the ASAC served him the following day with a letter of counseling for his behavior during four prior incidents. W-2 AF, Tab 22 at 34-35. On May 19, 2015, the appellant proposed to the ASAC, DSAC, and SAC that the agency could save expenses by closing HSI Deming entirely. W-1

IAF, Tab 7 at 4, 29-33. The appellant alleges that he subsequently received a lower performance rating for Fiscal Year (FY) 2015, was demoted to a "fictitious administrative liaison" position, was denied a reassignment and the possibility for a promotion, was threatened with disciplinary action, was involuntarily reassigned to another location, and was subjected to a hostile work environment.[2] W-1 IAF, Tab 1 at 5, Tab 7 at 9; W-2 AF, Tab 22 at 11-17.

On May 31, 2016, the appellant filed a complaint with the Office of Special Counsel (OSC) claiming that the agency took the above-referenced actions in retaliation for his reporting on the waste and abuse. W-1 IAF, Tab 1 at 13, 18. On October 6, 2017, OSC informed the appellant that it was closing its inquiry into his complaint and of his right to seek corrective action from the Board. W-2 AF, Tab 22 at 29. Shortly thereafter, the appellant filed the instant IRA appeal. W-1 IAF, Tab 1.

After informing the appellant of his jurisdictional burden, the administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction. W-2 AF, Tab 26, Initial Decision (ID) at 3-7. Specifically, he found that the appellant's proposal to close HSI Deming did not constitute a nonfrivolous allegation of a protected disclosure under 5 U.S.C. § 2302(b)(8)(A).[3] ID at 4-5. He did not address the appellant's alleged disclosures on April 21 and 22, 2015. Nor did he address the appellant's OIG complaint. ID at 4-6.

The appellant has filed a petition for review, arguing that the administrative judge failed to address his OIG complaint, and that his April 21 and 22, 2015 disclosures were protected because they contained allegations that the agency violated several statutes and policies, and otherwise constituted allegations of a

---

[2] Although the appellant uses the term "transfer," the intra-agency position changes that he describes would more properly be termed "reassignments." *See* 5 C.F.R. § 210.102(b)(10), (12), (18).

[3] The initial decision appears to contain a typographical error in referencing the correct statutory provision. ID at 5. While the administrative judge referenced "5 U.S.C. § 2302(a)(2)(6D)," it appears that he intended to reference 5 U.S.C. § 2302(a)(2)(D), which defines "disclosure" as contemplated by 5 U.S.C. § 2302(b)(8)(A).

gross waste of funds beyond a general policy dispute. Petition for Review (PFR) File, Tab 1 at 6-11. The agency has responded, and the appellant has filed a reply to the agency's response. PFR File, Tabs 5, 6.

## DISCUSSION OF ARGUMENTS ON REVIEW

An appellant may establish jurisdiction over his IRA appeal if he proves by preponderant evidence that he exhausted his administrative remedy before OSC and makes nonfrivolous allegations of the following: (1) he made a protected whistleblowing disclosure under 5 U.S.C. § 2302(b)(8) or engaged in protected activity under 5 U.S.C. §2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or activity was a contributing factor in the agency's decision to take or fail to take, or threaten to take or fail to take, a personnel action as defined by 5 U.S.C. § 2302(a)(2)(A). 5 U.S.C. §§ 1214(a)(3), 1221(e)(1); *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016); *see Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001); 5 C.F.R. § 1201.57(a)(1), (b), (c) (1).[4]

The appellant exhausted his administrative remedy regarding his alleged protected disclosures.

To satisfy the exhaustion requirement of 5 U.S.C. § 1214(a)(3), an appellant must provide to OSC a sufficient basis to pursue an investigation that might lead to corrective action. *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 10. In order to properly exhaust his administrative remedies before OSC, the appellant must show either: (1) OSC notified him that an investigation concerning him has been terminated and no more than 60 days have

---

[4] During the pendency of this appeal, the National Defense Authorization Act for Fiscal Year 2018 (NDAA), Pub. L. No. 115-91, 131 Stat. 1283, was signed into law on December 12, 2017. Section 1097 of the NDAA amended various provisions of Title 5 of the United States Code. Our decision to remand this appeal would be the same under both pre- and post-NDAA law.

elapsed since notification was provided to him; or (2) 120 days have elapsed since the appellant sought corrective action from OSC and he has not been notified by OSC that it shall seek corrective action on his behalf. 5 U.S.C. § 1214(a)(3); *Edwards v. Department of the Air Force*, 120 M.S.P.R. 307, ¶ 15 (2013).

The administrative judge found that the appellant exhausted his administrative remedy with OSC regarding the written proposal to close HSI Deming and the April 21 and 22, 2015 disclosures regarding the alleged gross waste of funds. ID at 4-5. The record confirms that the appellant's OSC complaint includes several references to the written proposal and the April 21 and 22, 2015 disclosures. W-2 AF, Tab 22 at 20-26, 29-30. Accordingly, we agree with the administrative judge that the appellant exhausted his administrative remedy in this regard.

The appellant nonfrivolously alleged that he made protected disclosures and engaged in protected activity.

The appellant alleged that the written proposal to close HSI Deming and his discussions with management on April 21 and 22, 2015, constituted protected disclosures. W-1 IAF, Tab 7 at 4; PFR File, Tab 1 at 5-6. A protected disclosure is a disclosure that an appellant reasonably believes evidences a violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. 5 U.S.C. § 2302(b)(8)(A); *Chambers v. Department of the Interior*, 515 F.3d 1362, 1367 (Fed. Cir. 2008); *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 18 (2013). A nonfrivolous allegation of a protected whistleblowing disclosure is an allegation of facts that, if proven, could show that the appellant disclosed a matter that a reasonable person in his position would believe evidenced wrongdoing under 5 U.S.C. § 2302(b)(8)(A). *Salerno*, 123 M.S.P.R. 230, ¶ 6. The appellant also argues that his OIG complaint was a protected activity under 5 U.S.C. § 2302(b)(9)(C). PFR File, Tab 1 at 9.

*The written proposal to close HSI Deming*

The administrative judge found that the appellant's proposal to close HSI Deming did not constitute a nonfrivolous allegation of a protected disclosure because the appellant could not reasonably believe that his assertions evidenced any of the situations specified in 5 U.S.C. § 2302(b)(8), specifically, an abuse of authority, gross mismanagement, or a gross waste of funds.[5]  ID at 5-6.  He further found that the alleged disclosures were a general philosophical or policy disagreement with agency decisions or actions, which are not protected.  *Id*.; 5 U.S.C. § 2302(a)(2)(D).

We agree with the administrative judge that the agency's decision to restructure HSI Deming was the sort of classic discretionary management judgment over which there might be subjective differences of opinion.  *See Downing v. Department of Labor*, 98 M.S.P.R. 64, ¶ 14 (2004) (considering whether an agency's decision to close a specific regional office constituted a policy decision).  Further, the administrative judge is correct that the Board generally will not treat a policy disagreement as a protected disclosure. *See id.*  The Board has reasoned, however, that such a disclosure can still be protected if it also constitutes an allegation of wrongdoing listed in section 2302(b)(8)(A).  *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 8 (2015).

The appellant argues that he "termed his disclosures as a proposal because the underlying matter of what [he] was reporting . . . potentially implicated [agency] management for a violation of a Federal policy or law."  PFR File, Tab 1 at 6.  However, nowhere in the proposal does he allege that the decisions regarding HSI Deming's operating status or staffing level violated any law, rule, or regulation.  W-1 IAF, Tab 7 at 29-33; 5 U.S.C. § 2302(b)(8).  Nor did he allege

---

[5] It appears that the administrative judge conflated all of the appellant's claims regarding disclosures of waste and instead focused exclusively on their content. ID at 4-6.  Based on our review of the initial decision, it seems that his findings relate mostly to the written proposal to close HSI Deming.  *Id.*

in the proposal that those agency decisions evidenced gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. W-1 IAF, Tab 7 at 29-33. Rather, the proposal stated that closing HSI Deming "would result in significant cost savings and a logistical benefit to the agency." *Id.* at 29. The proposal explains how the agency's proposed personnel changes would impact the efficiency of operations if HSI Deming were to remain open, lists the benefits of closing it, and answers potential questions regarding personnel, general operations, and the ability to carry out the agency's mission if HSI Deming were to close. *Id.* at 29-33. Therefore, we find that the proposal does not contain any disclosures; the appellant was simply proposing a solution to what he believed were problems caused by management's decisions. *Id.* Accordingly, we agree with the administrative judge that the appellant failed to make a nonfrivolous allegation of a protected disclosure concerning the proposal.

*The April 21 and 22, 2015 disclosures*

The appellant has alleged that on April 21, 2015, he disclosed that, by implementing the staffing changes at HSI Deming as proposed by agency management, the agency would have wasted almost $3 million in expanding HSI Deming only 2 years earlier. W-1 IAF, Tab 1 at 5, Tab 7 at 4. He also alleges that he made the same disclosure to the ASAC the following day. W-1 IAF, Tab 7 at 4. The administrative judge did not address these disclosures, so we will address them here.

The appellant's disclosures can be categorized as an alleged gross waste of funds.[6] 5 U.S.C. § 2302(b)(8)(A)(ii). A gross waste of funds constitutes a more than debatable expenditure that is significantly out of proportion to the benefit

---

[6] In his petition for review, the appellant lists several statutes that he believes agency officials also violated by its actions. PFR File, Tab 1 at 6-9. However, he has not alleged that his disclosures to management on April 21 and 22, 2015, included allegations that they violated the law; his alleged disclosures regarding those meetings appear to be solely allegations of a gross waste of funds. W-1 IAF, Tab 7 at 4.

reasonably expected to accrue to the Government. *Van Ee v. Environmental Protection Agency*, 64 M.S.P.R. 693, 698 (1994). The appellant need not prove that the condition disclosed actually established a gross waste of funds. *Peterson v. Department of Veterans Affairs*, 116 M.S.P.R. 113, ¶ 11 (2011). Rather, the test for determining whether the appellant had a reasonable belief that his disclosure was protected is whether a disinterested observer with knowledge of the essential facts, known to and readily ascertainable by the appellant, could reasonably conclude that the actions of the government evidence one of the categories of wrongdoing noted above. *Id.*

We find that the appellant has made a nonfrivolous allegation that he reasonably believed that his disclosures of April 21 and 22, 2015, evinced a gross waste of funds. In these disclosures, the appellant essentially stated that, in restructuring HSI Deming, the Government was wasting the nearly $3 million that it had just spent to expand the facility. *See, e.g.*, *Czarkowski v. Department of the Navy*, 87 M.S.P.R. 107, ¶ 11 (2000). Further, we find that a disinterested observer with knowledge of the essential facts that the appellant knew or could readily ascertain might reasonably conclude that the agency engaged in a gross waste of funds.[7] We arrive at this finding by considering the appellant's knowledge of HSI Deming's operations and staffing as a Supervisory Criminal Investigator. W-1 IAF, Tab 1 at 5; W-2 AF, Tab 19 at 8-9.

Additionally, the appellant's claim is sufficiently specific because he alleges a relatively precise monetary amount—nearly $3 million—that he believes to be a gross waste. W-1 IAF, Tab 1 at 5; *see Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶ 14 (2014) (stating that disclosures must be specific and detailed, not vague allegations of wrongdoing); *cf. Frederick v. Department of Veterans Affairs*, 63 M.S.P.R. 563, 571 (1994) (finding that the appellant did not

---

[7] In reaching this finding, we rely on the appellant's arguments and not on the agency's potentially conflicting evidence in the record. *See Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1364, 1369 (Fed. Cir. 2020); *Ingram v. Department of the Army*, 114 M.S.P.R. 43, ¶ 10 (2010).

nonfrivolously allege a gross waste of funds, in part, because his disclosure contained no indication as to the amount of funds involved). Accordingly, we find that the appellant made a nonfrivolous allegation that he made protected disclosures on April 21 and 22, 2015 regarding a gross waste of funds.

*The OIG complaint*

The appellant alleged below and again on review that he filed a complaint with the OIG regarding what he believed constituted waste and abuse at HSI Deming. W-2 AF, Tab 22 at 12, 58; PFR File, Tab 1 at 11. The administrative judge did not address this complaint. Under 5 U.S.C. § 2302(b)(9)(C), cooperating with or disclosing information to the OIG is considered protected activity. *Fisher v. Department of the Interior*, 2023 MSPB 11, ¶ 8 (finding that disclosures of information to an agency's OIG are protected regardless of their content, as long as such disclosures are made "in accordance with applicable provisions of law"). Accordingly, we find that the appellant nonfrivolously alleged that he engaged in a protected activity.

Based on the foregoing, we find that the appellant made a nonfrivolous allegation that he made protected disclosures under 5 U.S.C. § 2302(b)(8) on April 21 and 22, 2015, and engaged in protected activity under 5 U.S.C. § 2302(b)(9)(C) when he filed an OIG complaint.

<u>The appellant nonfrivolously alleged that his protected disclosures and protected activity were contributing factors to at least one personnel action.</u>

*The appellant nonfrivolously alleged that the agency took several personnel actions against him.*

The appellant claims that, in reprisal for making the above-referenced protected disclosures and for engaging in protected activity, the agency took the following actions: (1) issued him a letter of counseling; (2) gave him a lower performance evaluation for FY 2015; (3) reassigned him to a "fictitious" administrative liaison position that had significantly different duties than his supervisory position; (4) denied him a self-funded reassignment; (5) denied him

the possibility of a promotion; (6) proposed a 3-day suspension; (7) directed his reassignment to Washington state; and (8) created a hostile work environment. W-1 IAF, Tab 1 at 5; W-2 AF, Tab 22 at 11-17.

The principles of exhaustion that apply to the allegations of protected disclosures and activities discussed previously also apply to the purportedly retaliatory personnel actions raised by the appellant. *Schmittling v. Department of the Army*, 92 M.S.P.R. 572, ¶ 26 (2002) (stating that, in general, an appellant has not exhausted his remedy with OSC when he did not raise before OSC the personnel action he is appealing to the Board); *Roach v. Department of the Army*, 82 M.S.P.R. 464, ¶ 10 (1999) (finding that the Board lacked jurisdiction over a personnel action that the appellant did not first raise with OSC). The performance rating, the reassignment resulting in a significant change in duties, the denial of a reassignment, and the directed reassignment were all exhausted before OSC, W-1 IAF, Tab 1 at 18, 21-22; W-2 AF, Tab 22 at 29, and constitute personnel actions under 5 U.S.C. §§ 2302(a)(2)(A)(ii), (iv), (viii), (xii). The proposed disciplinary action and the denial of the possibility of a promotion do not appear to have been exhausted with OSC, and we will not consider them further. W-1 IAF, Tab 1 at 18, 21-22; W-2 AF, Tab 22 at 29.

Regarding the letter of counseling, we find that the appellant exhausted this claim with OSC. W-2 AF, Tab 22 at 23, 29. The letter of counseling described instances during which the ASAC believed that the appellant's behavior was inappropriate or hostile and cautioned that "another incident of this nature may lead to formal disciplinary action being taken against [him]." *Id.* at 35. Thus, the language was conditional in nature, clearly indicating that, if the appellant engaged in future misconduct, he could be disciplined. Such a general statement that future misconduct might result in disciplinary action remains a truism for any employee, at any time. *See Koch v. Securities & Exchange Commission*, 48 F.

App'x 778, 787 (Fed. Cir. 2002) (nonprecedential)[8] ("A wide range of agency rules, directives, and counseling measures contain the message, implicit or explicit, that failure to follow those directives or to meet expectations may have adverse consequences . . . . [N]ot all such general statements . . . constitute actionable 'threats' to take adverse action within the meaning of the Whistleblower Protection Act.").[9] Moreover, there is no indication that the letter was placed in the appellant's Official Personnel File. W-2 AF, Tab 22 at 34-35.

To prevent a supervisor from providing a general reminder to an employee that prospective misconduct could result in disciplinary action would hamper an agency's ability to effectively manage its workforce. *Cf. Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981) (including the clarity with which the employee was on notice of any rules that were violated in committing an offense, or had been warned about the conduct in question, in the nonexhaustive list of factors relevant to the penalty determination in adverse action cases). Accordingly, we find that the letter of counseling does not constitute a personnel action under 5 U.S.C. § 2302(a)(2)(A).

Regarding the appellant's claim that he was subjected to a hostile work environment, we find that the appellant exhausted this claim with OSC. W-1 IAF, Tab 1 at 23, 25, 27. The Board has recently clarified that, while the term "hostile work environment" has a particular meaning in other contexts, allegations of a hostile work environment may constitute a personnel action under the statute only if they meet the statutory criteria, i.e., constitute a significant change in duties, responsibilities, or working conditions. 5 U.S.C. § 2302(a)(2)

---

[8] The Board may follow a nonprecedential decision of the U.S. Court of Appeals for the Federal Circuit when, as here, it finds its reasoning persuasive. *LeMaster v. Department of Veterans Affairs*, 123 M.S.P.R. 453, ¶ 11 n. 5 (2016).

[9] This appeal may be distinguished from the Board's decision in *Campo v. Department of the Army*, 93 M.S.P.R. 1, ¶¶ 7-8 (2002), because in that case the agency issued a memorandum of warning informing an employee that she would be charged with insubordination or creating a disturbance if she continued to make purportedly unfounded allegations, the substance of which comprised her protected disclosures. Such is not the case here.

(A)(xii); *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶¶ 15-16. Although a "significant change" in working conditions should be interpreted broadly, only agency actions that, individually or collectively, have practical and significant effects on the overall nature and quality of an employee's working conditions, duties, or responsibilities will be found to constitute a personnel action covered by section 2302(a)(2)(A)(xii). *Id.*

Here, the appellant alleged that the ASAC singled him out in meetings, publicly intimidated and threatened him, poked his finger directly into his face, yelled at him, and called him names like "cry baby." W-1 IAF, Tab 7 at 7, 9. He also alleged that within weeks of being assigned as his supervisor, the ASAC issued him the letter of counseling. W-2 AF, Tab 22 at 11. He also claimed that the ASAC issued the FY 2015 performance evaluation and reassigned him to an administrative liaison position with diminished duties. W-1 IAF, Tab 7 at 6. He asserted that the environment became so "hostile, untenable, and dangerous" that he communicated to the agency that he would accept any reassignment, even if it was to an unrequested location. *Id.* at 9. Given the broad interpretation afforded the term "significant change in duties, responsibilities, or working conditions," *Ingram v. Department of the Army*, 116 M.S.P.R. 525, ¶ 4 (2011), we find that the appellant nonfriovlously alleged that the agency's actions, individually and collectively, had an impact on the quality of his working conditions, and therefore, constituted a hostile work environment under 5 U.S.C. § 2302(a)(2)(A)(xii).

In sum, we find that the following alleged actions constitute personnel actions as defined by 5 U.S.C. § 2302(a)(2)(A) and were properly exhausted with OSC: (1) the FY 2015 performance evaluation; (2) the reassignment resulting in a significant change in duties; (3) the denial of a reassignment; (4) the directed reassignment; and (5) the hostile work environment.

*The appellant nonfrivolously alleged that his protected disclosures and protected activity were contributing factors in the above-referenced personnel actions.*

We now consider whether the appellant nonfrivolously alleged that his protected disclosures and protected activity were contributing factors to the personnel actions discussed above. *Salerno*, 123 M.S.P.R. 230, ¶ 5. To satisfy the contributing factor criterion at the jurisdictional stage, an appellant only need raise a nonfrivolous allegation that the fact of, or the content of, the protected disclosure or protected activity was one factor that tended to affect the personnel action in any way. *Id.*, ¶ 13. One way to establish this criterion is the knowledge/timing test, under which an employee may nonfrivolously allege that the disclosure or activity was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official who took the personnel action knew of the disclosure or activity and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or activity was a contributing factor in the personnel action. *Id.*

Here, the appellant alleged that the ASAC was responsible for the performance rating, the reassignment that resulted in a significant change in duties, and the hostile work environment. W-1 IAF, Tab 7 at 6, 9. The performance rating was issued on October 15, 2015, *id.* at 6, the reassignment resulting in a significant change of duties was imposed on January 8, 2016, *id.*, and the hostile work environment began in April 2015, and culminated during an altercation between the appellant and the ASAC on May 21, 2016, *id.* at 9. The ASAC was present for the April 21 and 22, 2015 disclosures, and the appellant has alleged that his "chain of command had knowledge of his whistleblower complaints." W-2 AF, Tab 22 at 12, 15.

Because the appellant has alleged that the performance rating, the reassignment resulting in a significant change in duties, and the hostile work environment all occurred within approximately 1 year of the April 2015

disclosures, and that his chain of command, which included the ASAC as his first-level supervisor, had knowledge of these disclosures, we find that he nonfrivolously alleged that the protected disclosures were a contributing factor in these actions. *See Salerno*, 123 M.S.P.R. 230, ¶ 13; *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 21 (2015) (stating that a personnel action that occurs within 1 to 2 years of the protected disclosures satisfies the knowledge/timing test).

The appellant also alleged that the performance rating, reassignment resulting in a significant change in duties, and hostile work environment occurred within 1 year of the May 13, 2015 OIG complaint and that his chain of command had knowledge of it. W-1 IAF, Tab 7 at 6, 9; W-2 AF, Tab 22 at 11. We find that this also constitutes a nonfrivolous allegation that the OIG complaint was a contributing factor in the FY 2015 performance rating, the reassignment resulting in a significant change in duties, and the hostile work environment. *See Salerno*, 123 M.S.P.R. 230, ¶ 13; *Mastrullo*, 123 M.S.P.R. 110, ¶ 21.

Regarding the denial of the reassignment, the appellant alleged that another DSAC[10] denied the appellant a self-funded reassignment to Albuquerque, New Mexico in February 2016. W-1 IAF, Tab 7 at 7. Thus, this personnel action occurred within 1 year of the appellant's alleged protected disclosures and protected activity. *Id.* Concerning the knowledge prong, the appellant has not specifically alleged that this DSAC was aware of his April 21 and 22, 2015 disclosures and OIG complaint, but he has alleged that his "chain of command" and "agency management" were aware of them. W-2 AF, Tab 22 at 13-14. The agency has confirmed that this DSAC was the appellant's second-line supervisor. W-2 AF, Tab 18 at 6. At the jurisdictional stage, we find this allegation sufficient to meet the nonfrivolous allegation standard. *See* 5 C.F.R. § 1201.4(s). Accordingly, we find that the appellant nonfrivolously alleged that his April 21

---

[10] The DSAC whom the appellant alleges denied his reassignment is a different DSAC than the one present at the April 21, 2015 meeting and through whom he submitted his proposal to close HSI Deming. W-1 IAF, Tab 7 at 6, 29.

and 22, 2015 disclosures and OIG complaint contributed to the agency's decision to deny the appellant's request for reassignment. *See Salerno*, 123 M.S.P.R. 230, ¶ 13; *Mastrullo*, 123 M.S.P.R. 110, ¶ 21.

Regarding the effectuated reassignment, the appellant alleges that the executive associate director (EAD) directed his reassignment to Blaine, Washington on June 13, 2016. W-1 IAF, Tab 1 at 8. Although this reassignment occurred within 1-2 years of the alleged protected disclosures and protected activity, it is unclear from the pleadings whether the EAD was aware of them. Again, the appellant has alleged that his "chain of command" and "agency management" were aware of his April 21 and 22, 2015 disclosures and OIG complaint. W-2 AF, Tab 22 at 11, 16-17. Although it is unclear whether this includes the EAD, we resolve the ambiguity in the appellant's allegations in his favor and find his allegations sufficient to establish jurisdiction over this claim. *See Ingram v. Department of the Army*, 114 M.S.P.R. 43, ¶ 10 (2010) (stating that any doubt or ambiguity as to whether the appellant made nonfrivolous jurisdictional allegations should be resolved in favor or finding jurisdiction). Because we find that the appellant met the knowledge/timing test at this stage of the proceedings, we find that he nonfrivolously alleged that his April 21 and 22, 2015 disclosures and OIG complaint were contributing factors in the directed reassignment. *See Salerno*, 123 M.S.P.R. 230, ¶ 13; *Mastrullo*, 123 M.S.P.R. 110, ¶ 21.

In sum, we find that the appellant nonfrivolously alleged that he made protected disclosures and engaged in protected activity that were contributing factors in the above-discussed personnel actions, thereby establishing the Board's jurisdiction over his IRA appeal. *See Salerno*, 123 M.S.P.R. 230, ¶ 5.

<u>The appellant is entitled to a hearing on the merits.</u>

Because the appellant established jurisdiction over his IRA appeal, we remand the case for a hearing on the merits.[11]  Generally, an appellant must establish a prima facie case of whistleblower retaliation by proving by preponderant evidence that he made a protected disclosure or engaged in a protected activity that was a contributing factor in a personnel action taken against him. 5 U.S.C. § 1221(e)(1); *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015).  If he makes out a prima facie case, then the agency is given an opportunity to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the protected disclosure.  5 U.S.C. § 1221(e)(1)-(2); *Lu*, 122 M.S.P.R. 335, ¶ 7.

---

[11] In the initial decision, the administrative judge stated that "when an appellant makes a nonfrivolous allegation of Board jurisdiction, the appellant is entitled to a hearing on the jurisdictional question."  ID at 2.  In the appellant's petition for review, he asserts that he is "entitled under the law to a jurisdictional hearing."  PFR File, Tab 1 at 20. We clarify that when an appellant exhausts his administrative remedy with OSC and makes a nonfrivolous allegation that he made a protected disclosure or engaged in a protected activity that was a contributing factor in a personnel action, he is entitled to a hearing on the merits.  *Graves v. Department of Veterans Affairs*, 123 M.S.P.R. 434, ¶ 22 (2016).

**ORDER**

For the reasons discussed above, we grant the appellant's petition for review, vacate the initial decision, and remand this case to the Denver Field Office for further adjudication in accordance with this Remand Order.[12]

FOR THE BOARD:

*Gina K. Grippando*

_____

Gina K. Grippando
Clerk of the Board

Washington, D.C.

---

[12] In the remand initial decision, the administrative judge may reincorporate prior findings as appropriate, consistent with this Remand Order.